The STATE of Ohio, Appellee,

v.

WEEKS, Appellant.

[Cite as *State v. Weeks* (1989), 64 Ohio App.3d 595.]

Court of Appeals of Ohio,
Clermont County.

CA89–03–014.

Decided Sept. 25, 1989.

*Donald W. White,* Prosecuting Attorney, and *Timothy E. Schneider,* for appellee.

*Gregory P. Moran,* for appellant.

*Per Curiam.*

This is an appeal by defendant-appellant, Michael Weeks, from a conviction in the Clermont County Court of Common Pleas for assault.

On May 19, 1988, appellant was indicted for felonious assault in violation of R.C. 2903.11(A)(1). Subsequently, appellant entered a plea of not guilty. On July 5, 1988, he filed a motion for appointment of an expert witness to evaluate the medical records of the victim. This motion was denied by the trial court.

Having waived his right to a jury trial, appellant was tried by the court on February 8, 1989. The following evidence was presented. On March 18, 1988, appellant's wife took their two-month-old son, Aaron Weeks, to Children's Hospital in Cincinnati because he was having difficulty breathing. Dr. Robert Shapiro, director of Children's Hospital Child Abuse Team, examined the child. He discovered that Aaron had suffered rib fractures and extensive bruising. He diagnosed these injuries as being the result of child abuse.

Aaron was released from the hospital to his parents on March 22, 1988. That same day, Susan Grabowski of Clermont County Children's Protective Services visited appellant and his wife to discuss the possible cause of Aaron's injuries. She found that appellant had no real explanation for Aaron's injuries and that he was neither angry nor upset over his son's problems. However, the state offered no evidence to connect appellant to this set of injuries.

Children's Protective Services ordered that Aaron be removed from appellant's home and placed in the custody of his grandparents. Pursuant to this order, Aaron was not to be left alone with either parent. However, the order was violated.

On April 6, 1988, Aaron was taken by ambulance to Children's Hospital. Dr. Shapiro located Aaron, who was experiencing seizures, in the trauma room. He and a neurosurgeon examined Aaron and ordered several tests. They determined that Aaron was suffering from a subdural hematoma, which is hemorrhaging in the brain.

Dr. Shapiro indicated that Aaron's injuries were typical of the "shaken baby syndrome." This syndrome describes the injuries that occur when a very young child is violently shaken, causing movement of the brain inside the skull. He concluded that Aaron's injuries were the result of child abuse.

The following day, Dr. Miles Burke, director of Pediatric Opthalmology, examined Aaron. He determined that the child had retinal hemorrhages, often associated with subdural hematomas. The shape and location of the hemorrhages were consistent with the shaken baby syndrome. He also concluded that Aaron's injuries were most likely caused by a violent shaking. He indicated that a mild shaking would not cause Aaron's symptoms. The child would have to be held up without external support and shaken vigorously with its head "flopping around." He further stated that he saw no hemorrhages when he examined Aaron on March 18, 1988, and that they would have had to occur sometime after that date.

Detective Barry Creighton of the Clermont County Sheriff's Office interviewed appellant at the Clermont County Jail on May 6, 1988. Creighton told appellant that his wife had made a taped statement indicating that he had shaken the baby. Appellant subsequently admitted to shaking the baby on April 5, 1988, the day prior to his admission to the hospital. Creighton testified that appellant admitted that he had picked the baby up under the arms, held him up and shaken him in an effort to waken him. Appellant testified that he had shaken the baby and that he admitted this to Creighton. However, he denied shaking the baby in the manner Creighton described. He stated that Aaron was lying in his car seat and that he touched him on the chest and "kind of wiggled him."

After trial, the court found that appellant's shaking of the baby on April 5 was a proximate, although perhaps not the only, cause of Aaron's injuries, but that the state had failed to prove an element of felonious assault, *i.e.*, that appellant had knowingly caused harm to the child. However, the court found that there was sufficient evidence that appellant acted recklessly, and he was found guilty of the lesser included offense of assault, R.C. 2903.13. This appeal followed.

Appellant presents two assignments of error for review. In his first assignment of error, he states that the trial court erred in denying his motion to appoint an expert witness. He argues that the state's case primarily relied

upon two expert witnesses and that he could not adequately refute their testimony without his own expert. We find this assignment of error is not well taken.

The only statutory authority for the appointment of an expert at the state's expense for an indigent defendant is R.C. 2929.024. It provides that, in capital cases, if the trial court finds that the services of experts, and other services, are reasonably necessary for the defendant's representation, the court shall authorize defendant's counsel to obtain the necessary services at the state's expense.

In noncapital cases, there is no authority mandating the appointment of an expert for an indigent defendant. *State v. Prater* (June 19, 1986), Marion App. No. 9–85–2, unreported, at 4, 1986 WL 7115; *State v. Kingsley* (June 26, 1984), Warren App. Nos. CA83–07–046 and CA83–09–065, unreported, at 6, 1984 WL 3376. Thus, the standard to be applied is abuse of discretion and we must determine whether the trial court abused its discretion in overruling appellant's motion. *Prater, supra,* at 6. See, also, *State v. Scott* (1987), 41 Ohio App.3d 313, 314, 535 N.E.2d 379, 382.

Even in capital cases involving the application of R.C. 2929.024, the decision of whether to appoint an expert witness at the state's expense lies within the discretion of the trial court. *State v. Broom* (1988), 40 Ohio St.3d 277, 283, 533 N.E.2d 682, 691; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264, paragraph four of the syllabus, certiorari denied (1985), 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643. The factors the trial court should consider are "(1) the value of the expert assistance to the defendant's proper representation * * *; and (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought." *Id.*

We will use these factors as a guide in determining whether the trial court abused its discretion. We also bear in mind that in any case where an indigent defendant seeks appointment of an expert, the defendant bears the initial burden of establishing the reasonableness of his request. "At a minimum, the indigent defendant must present the trial judge with sufficient facts with which the court can base a decision. * * * Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate." (Citations omitted.) *Scott, supra,* 41 Ohio App.3d at 315, 535 N.E.2d at 382.

In the present case, appellant has failed to establish that expert assistance would have been valuable to his defense. He argues that he had an unfair trial because he could not effectively refute the testimony of the

state's experts. Drs. Shapiro and Burke both testified unequivocally that Aaron suffered from the shaken baby syndrome. They ruled out any other diagnosis. Appellant has set forth no facts to show that a third expert would come to a different conclusion. Moreover, no expert would have been capable of refuting appellant's admission to Creighton that he shook the baby.

Appellant also had alternate means available to refute the testimony of Drs. Shapiro and Burke. Appellant's counsel did a thorough cross-examination of both the state's experts. It is apparent from the record that appellant's counsel had done his own study and that he understood the medical issues involved in the case. Consequently, he was able to confront the state's experts on all important issues.

Under the circumstances, appellant has failed to make a particularized showing of need for expert assistance. Where no such need or prejudice is shown, we cannot find an abuse of discretion by the trial court in denying the appointment of an expert. See *Broom, supra,* 40 Ohio St.3d at 284, 533 N.E.2d at 692. Accordingly, appellant's first assignment of error is overruled.

In his second assignment of error, appellant states that the trial court erred in finding him guilty, since the verdict was against the manifest weight of the evidence. He argues that the case turned on the brain injury which both the state's experts testified probably occurred three to five days prior to April 6, 1988. The only evidence connecting appellant to any contact with the baby was his admission that he shook the baby within twenty-four hours of April 6, 1988. Thus, he contends the evidence was inadequate to tie him to the victim's injuries. We find this assignment of error is not well taken.

"A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

The evidence at trial established that Aaron entered Children's Hospital on April 6, 1988. Two doctors concluded that the child was suffering from brain hemorrhaging as a result of being violently shaken, which they felt was the only possible diagnosis. Appellant admitted shaking the child, the very act that the doctors described as the cause of his injuries. Both doctors testified that, to the extent they could be certain, Aaron's injuries, when diagnosed on April 6, 1988, were probably three to five days old. However, Dr. Burke testified that the retinal hemorrhages were not present on March 21, 1988, so the injury definitely occurred sometime after that date. In terms of the "clinical appearance" of the retinal hemorrhages, it looked like "the first week of the injury or whatever caused the bleeding." The only time frame

definitely established by the evidence was that the child's injuries occurred sometime after March 18, 1988. Thus, there was substantial evidence from which the court could reasonably conclude that all the elements of the offense of assault had been proven beyond a reasonable doubt. Appellant's second assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., HENDRICKSON and KOEHLER, JJ., concur.