[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant, Brandie Mathias, appeals from the judgment of the Fostoria Municipal Court, Seneca County, following a jury verdict in which she was found guilty of assault in violation of R.C.2903.13, resisting arrest in violation of R.C. 2921.33, and obstructing official business in violation of R.C. 2921.31.
On August 25, 1996, at approximately 2:49 a.m., four police officers responded to a complaint about a disturbance at the residence of 203 Columbus Avenue. Defendant was present with her friend, Pilar Ferguson. However, defendant who suffers from muscular dystrophy was in a motorized scooter designed for handicapped individuals and stayed outside the house because of the stairs. When the officers arrived, they observed a large crowd of people inside the residence and there were fights at that time. Officer Scoble testified that Pilar was fighting and because of this, she was placed under arrest. Pilar was then placed in the rear seat of his patrol car with the assistance of Officer Hofacker.
Defendant came up to the two officers as they were walking away from the patrol car and told them that they were not taking Pilar. According to both officers, defendant was warned to stay away from the patrol car or she would be arrested. Defendant proceeded to open the rear door of the car and she was then told she was under arrest. When the officers attempted to arrest her, defendant grabbed and slapped them. Officer Hofacker specifically testified that defendant grabbed him by the genitals and squeezed and that it was necessary to then hit her hand with his flashlight. Officer Scoble had his pants ripped where defendant grabbed him. Defendant continued to be combative and Officer Hofacker used mace to effectuate her arrest. After defendant was transported to the police station, the matron jailer heard a discussion in the booking room between Officer Hofacker and the defendant concerning the charges. According to the matron jailer, defendant stated "well, so" as the officer told her that she would be charged with assault for hitting and grabbing him.
The defense called two witnesses and the defendant herself. Defense witness Bennett, who has known defendant while she has had muscular dystrophy, testified as to defendant's physical disabilities. In particular, Bennett stated that she has observed defendant's ability to grip things. According to Bennett, defendant can grip a pen but that would not be tightly. She also recounted that defendant has a limited range of upward motion with her arms and that her range of motion would not increase after consumption of alcohol.
Defendant disputed the officers' version of events on the morning in question. According to defendant, she told the officers that Pilar just had a Cesarean section but they went on to "throw her in the car anyway." Defendant stated that she opened the rear door of the patrol car because she was concerned about Pilar's medical condition. It is not in dispute that Pilar had a Cesarean section on August 16, 1996. While defendant denied ever grabbing the officers' clothing or genitals, she did state that she had slapped them while she was being arrested because they were hurting her.
Defendant was charged with assault, resisting arrest, and obstructing official business. The jury convicted defendant on all three charges and the trial court sentenced her accordingly. Defendant now appeals that judgment of conviction and sets forth three assignments of error. For her first assignment of error, defendant asserts:
 The trial court abused its discretion, with harmful prejudice, therein denying the defendant due process of law and equal protection of the laws, and denying the defendant a fair trial, by overruling the defendant's motion for a medical expert and medical documents to be provided at public expense, for evaluation of the indigent defendant's medical condition, to wit, the disease of muscular dystrophy, with regard to evaluating the defendant-appellant's contended and relevant physical inability to have committed the charged offenses, in the physical manner so alleged.
Defendant moved the trial court to have a medical expert appointed to evaluate defendant's physical condition and to obtain medical documentation at the State's expense. The trial court denied defendant's request. On appeal, defendant argues that the trial court's denial of State funds deprived her of her constitutional rights. She asserts that expert medical testimony regarding her physical condition of muscular dystrophy was needed to rebut that of the police officers as to whether she had the physical ability to commit the offenses charged.
In non-capital cases, there is no statutory authority requiring appointment of an expert for an indigent defendant.State v. Weeks (1989), 64 Ohio App.3d 595; State v. Bean (Jan. 23, 1998), Montgomery App. No. 16438, unreported; State v. Beekman
(Aug. 13, 1992), Hancock App. No. 5-91-33, unreported; see R.C.2929.024. We held in Beekman that abuse of discretion is the standard for reviewing the trial court's determination on such an appointment. Accord Weeks and Bean. Additionally, we observe that other Ohio courts have applied the factors used by the Ohio Supreme Court to resolve the appointment of a state-funded expert in a capital case under R.C. 2929.024 as a guide in reviewing whether a trial court has abused its discretion in refusing to appoint an expert in a non-capital case. See Weeks and Bean. The factors the court has set forth are: "`(1) the value of the expert assistance to the defendant's proper representation at * * * trial; and (2) the availability of alternative devices that fulfill the same functions as the expert assistance sought.'" State v. Broom
(1988), 40 Ohio St.3d 277, 283, quoting State v. Jenkins (1984),15 Ohio St.3d 164, paragraph four of the syllabus.
In making its decision to deny the defendant's request to appoint an expert, the trial court considered cross-examination of the State's witnesses on the issue of whether defendant had the physical strength to act as alleged, which would necessitate appraisal of witness credibility. Moreover, it was plausible that a witness who has known of the defendant's disability would have been capable of refuting the testimony of the State's witnesses on this issue. It is apparent that defendant's counsel did vigorously cross-examine the State's witnesses at trial and was also able to use the testimony of a defense witness to refute their testimony on the defendant's physical abilities. In light of these alternatives through which the defendant could accomplish the same end as the expert testimony, we cannot find that the trial court abused its discretion in denying defendant's motion. Defendant's first assignment of error is overruled.
For her second assignment of error, defendant asserts:
 The trial court reversibly erred, when it overruled defendant's motion for a mistrial, after harmful and prejudicial direct testimony was elicited by the State, for the State, and from the State, directly referring to undisclosed, incriminating tangible State's evidence, to wit, a State-witnessed videotape of defendant, the prior undisclosed incriminating nature of which violated the discovery provisions of Criminal Rule 16(B)(1)(a), (c) and (f), and so deprived the defendant-appellant of the fundamental right to a fair trial, and to due process of law.
The testimony that defendant points to in this assignment of error was that of Officer Hofacker when he referred to a videotape of defendant's behavior in the booking room at the police station. The testimony from the officer was as follows:
 This is taking place in the booking room in the back. And we also have this — that we pulled the tape, it's a security camera tape that's back there, and we have it in evidence on the audible tape that she — 
At this point, defense counsel moved for a mistrial on the basis that the State had violated the rules of discovery by failing to disclose the videotape to the defense. Defendant's counsel asserted that he was unable to determine whether or not the videotape supports or refutes the testimony of the witness because it was not disclosed. After the trial court overruled the motion, defense counsel then requested that the jury be instructed on this issue.
On appeal, defendant claims that the trial court abused its discretion when it overruled her motion for a mistrial. In support of her argument, defendant states that she was prejudiced from properly preparing her defense or receiving a fair trial.
Crim.R 16(E)(3) permits a court to impose sanctions upon a party not complying with the discovery rules, including allowing the discovery or inspection, granting a continuance, prohibiting the party from introducing in evidence the material not disclosed, or making any other order the court deems just under the circumstances. The trial court is vested with the discretion to determine the appropriate sanction for a discovery rule violation.State v. Wiles (1991), 59 Ohio St.3d 71, 78. In Lakewood v.Papadelis (1987), 32 Ohio St.3d 1, 5, the Ohio Supreme Court stated that a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding the sanction to be imposed, must impose the least severe sanction that is consistent with the purpose of the rules of discovery. Thus, reversible error exists only where the trial court has abused its discretion. Wiles, supra.
In the present case, the record indicates the trial court ordered pursuant to Crim.R 16(E)(3) that the State produce the videotape for defendant's counsel to review. In addition, the court made a finding that the nondisclosure was not wilful after the State's "lead" counsel indicated she was unaware of that videotape prior to the trial. Furthermore, the State was prohibited from introducing the tape into evidence, but if defense counsel should desire to introduce it, the court indicated that counsel would be permitted to recall Patrolman Hofacker to cross-examine him about the same. On this issue, the jury was instructed to disregard what the patrolman said about a tape.
Under the circumstances in this case, we find that the trial court did not abuse its discretion in denying defendant's request for a mistrial. While defense counsel did not request, but could have, requested a continuance, he was given an opportunity to review the videotape prior to presenting defendant's defense and chose not to enter it into evidence to refute the State's case. Consequently, it does not appear that defendant was prejudiced from properly preparing her defense. It is also important to note that the trial court admonished the jury to not consider the statement made by the officer. Defense counsel did, however, cross-examine the officer as follows:
 Q: * * * You talked about briefly a videotape in the booking area today on the stand, didn't you?
A: Yes, sir.
 Q: You never told the State prosecutor about that tape until after you got off the stand this morning, did you?
A: That's not true.
 Q: You — are you saying that you told these people, these three prosecutors that you had a videotape of my client?
A: When I was questioned today by the prosecutor.
 Q: I'm not talking about when you were questioned. I'm talking about before you took the stand.
 A: I never had a conversation with them about the tape.
 Q: Okay. So you never told the prosecutor about this tape before you took the stand today?
A: No, I — the Captain took the tape into evidence.
 Q: Okay. And you didn't write about the tape in your report, did you? Look at your report and tell me if it's in your report.
A: I know it's not in the report.
From our review of this record, defendant has not demonstrated he was prejudiced as a result of the officer's statement. The second assignment of error is therefore overruled.
For her last assignment of error, defendant asserts:
 The State's three-prosecutors format, as it was peculiarly applied and conducted at trial, was harmfully prejudicial and fundamentally unfair to the indigent defendant's right to a fair jury trial, and to the indigent defendant's right to due process of law. To wit, the imbalancing act of the State's prosecutorial triumvirate did oppressively, reinforcefully, and overwhelmingly affect the substantial rights of the accused, by the prosecution improperly pre-supposing itself to having a monopoly on the truth, and to having a fundamentally unfair, harmfully prejudicial, prosecutorial claim to moral superiority, by virtue of adversarial, numerical superiority over the indigent defendant and her lone court-appointed counsel, thereby constituting plain error.
During the course of defendant's trial, three part-time prosecutors participated in the prosecution of the defendant. The thrust of defendant's argument is that the prosecution indulged in this format to unfairly suggest a "monopoly" on the truth in contravention of her constitutional right to a fair trial. The defendant, citing Crim.R 52(B), contends the alleged prosecutorial misconduct constitutes plain error. In support of her argument, defendant points to the following remarks of the prosecutor during opening and closing arguments. First, as to opening argument:
 You might be wondering why there are three of us here, and I would like the opportunity to explain that to you. We divide up our case load here because we are all part-time prosecutors. And when we do that occasionally there are certain cases that we need to consult each other on to make sure that we really find the truth; to make sure that the proper message is sent to the community.
Second, closing argument included:
 Do you remember my opening statement when I explained to you that we have three part-time city prosecutors, that we work together to make sure we're finding the truth? The prosecutor's job and the defense attorney's job are not the same. While we all like Mr. Stotzer and realize that he's a very good lawyer, you have to understand that a prosecutor is bound by an ethical code of conduct to bring you the whole picture; bring you the truth. That is not the defense attorney's job. His job is to talk a lot — 
In order to prevail on the plain-error standard of review under Crim.R 52(B), the defendant must demonstrate that the outcome of her trial would clearly have been different but for the errors that she alleges. See State v. Waddell (1996), 75 Ohio St.3d 163,166. However, because defense counsel did object to the prosecutor's remarks during closing argument, our review is not limited to plain error only. The standard for prosecutorial misconduct during closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160,165. The prosecution is generally entitled to a large degree of latitude in its closing arguments. Id.
As discussed above, defense counsel objected to those statements made during the prosecutor's closing argument. This objection was properly sustained by the trial court and the jury was instructed that both defense counsel and the prosecution are under the same ethical duty to be truthful. Also, the trial court reminded the jury that the attorneys' closing arguments were not to be considered evidence. After carefully reviewing the prosecutor's statements herein, we do not find these statements undermined the fairness of defendant's trial because the curative instruction was adequate and there was sufficient evidence of guilt.
Accordingly, we overrule defendant's third assignment of error. The judgment and sentence of the municipal court is affirmed.
Judgment affirmed.
 BRYANT and HADLEY, JJ., concur.