OPINION.
{¶ 1} This is an appeal and cross-appeal from the judgment and sentence of the Crawford County Court of Common Pleas in which a jury convicted Defendant Appellant/Cross Appellee, James Cooper (Cooper), of Involuntary Manslaughter and Endangering Children.
 {¶ 2} On January 18, 2000, Cooper was babysitting his stepson, Jordan McElhatten (Jordan). At approximately 10:16 p.m., Cooper made a 911 call during which he told the operator that Jordan had fallen and was having difficulty breathing. The 911 operator notified Cooper that an ambulance was being dispatched to Cooper's home. When the ambulance arrived, Cooper told the paramedics that after he had changed Jordan's diaper in the upstairs bedroom, Jordan ran to the top of the stairs and then fell down the entire flight of stairs. Jordan was transported to the Galion Hospital and thereafter life-flighted to Cleveland Metro Hospital where he died. The Galion Police Department was called to investigate whether Jordan's injuries were due to an accident or possible child abuse. On February 25, 2001, an autopsy was performed in which the coroner ruled Jordan's death a homicide.
 {¶ 3} On April 9, 2001, Cooper was indicted for Involuntary Manslaughter as follows: "James A. Cooper did cause the death of Jordan McElhatten, as a proximate result of the defendant's committing or attempting to commit a felony, to wit: felony Child Endangering in violation of Ohio Revised Code Section 2919.22, in violation of Section2903.04 of the Revised Code, INVOLUNTARY MANSLAUGHTER, a Felony of the First Degree." Cooper was also indicted for Child Endangering as follows: "James Cooper, did, recklessly abuse Jordan McElhatten, a child under eighteen years of age resulting in serious physical harm to his child, in violation of Section 2919.22 of the Revised Code, ENDANGERING CHILDREN, a Felony of the Second Degree."
 {¶ 4} As no subsection of R.C. 2919.22 was alleged in the indictment to support the Involuntary Manslaughter charge, Cooper requested a Bill of Particulars. The Bill of Particulars, while not stating specific subsections of R.C. 2919.22, stated that the Child Endangering predicate to Involuntary Manslaughter included three alternatives, to wit: that Cooper created a
substantial risk to the health or safety of that child by recklesslyviolating a duty of care [R.C. 2919.22(A)] and/or protection to thechild, that Cooper did recklessly abuse this child [R.C. 2919.22(B)(1)],and that Cooper did recklessly cruelly abuse this child [R.C.2919.22(B)(2)] all of which resulted in serious physical harm and deathto the child. (Revised Code sections added).
 {¶ 5} The Bill of Particulars also stated that under Count Two of the indictment, that Cooper did "recklessly abuse [Jordan] by starting to shake and/or impact on or upon the child to the extent that the resulting injuries from the defendant's conduct caused serious physical injuries to the child." While not stated in the Bill of Particulars, if committed, this offense represents a violation of R.C. 2919.22(B)(1).
 {¶ 6} Cooper pled not guilty and the case was scheduled for jury trial on May 7, 2001. The trial was continued several times but was finally held December 17, 2001 through December 19, 2001. At the close of the evidence, the jury was instructed to find Cooper guilty of involuntary manslaughter by the trial court if it found that Cooper caused Jordan's death by creating a substantial risk to the health or safety of him by violating a duty of care or protection (R.C. 2919.22(A)) or by recklessly cruelly abusing him (R.C. 2919.22(B)(2)). However, the jury was not instructed to consider whether Cooper caused Jordan's death by recklessly abusing him (R.C. 2919.22(B)(1)) notwithstanding reference to this alternative in the Bill of Particulars and Opening Statements.
 {¶ 7} A jury found Cooper guilty of both counts "in manner and form as he stands charged in the indictment." However, the jury did not identify the specific language or which subsection of R.C. 2919.22
supported the involuntary manslaughter conviction. In a judgment entry dated January 18, 2002, the trial court determined that the offenses of which Cooper was convicted were allied for sentencing purposes and that Cooper would be sentenced only for Involuntary Manslaughter. On the same day, a sentencing hearing was held at which the trial court sentenced Cooper to the maximum sentence of ten years.
 {¶ 8} Cooper now appeals asserting three assignments of error and the State cross-appeals asserting a single assignment of error.
The Trial Court Erred In Permitting The Introduction Of PhotographsWhich Did Not Advance The Proof Of Relevant Issues, And Which WereInflammatory And Prejudicial.
 {¶ 9} It is well settled that "the admission of photographs is left to the discretion of the trial court." State v. Smith (1997),80 Ohio St.3d 89, 108, 1997-Ohio-355. "[T]he probative value of a photograph must outweigh the danger of material prejudice to the defendant and the photograph must not be repetitive." Id. The trial court's decision will not be reversed "`unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby * * *.'" State v. Slagle (1992), 65 Ohio St.3d 597, 602, quotingState v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion has been defined as a decision that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 10} In this case, thirteen photographs of Jordan were admitted into evidence. Four of the photographs were of Jordan prior to January 18, 2000, seven photographs were from the autopsy report and two photographs were of Jordan in the hospital prior to his death. Initially, we note that all of the photographs are probative of the identity of the victim, as the victim was not present at trial to testify. See State v.Fahringer (May 11, 2000), Defiance App. No. 4-99-14, 2000-Ohio-1741. Additionally, nine of the photographs were probative of the injuries that Jordan sustained and further demonstrated the cause of his death. Furthermore, while all autopsy photographs will inevitably be disturbing, we do not find that these particular photographs are so gruesome as to prejudice the defendant. As such, we find that the probative value of these photographs outweigh any prejudice to the defendant.
 {¶ 11} Cooper also argues that the photographs of Jordan were repetitive, however, only thirteen photographs were admitted and nearly all of the photographs depict different views of Jordan's injuries. Therefore, we cannot find the introduction of these photographs at trial repetitive. Consequently, we cannot find the trial court abused its discretion in admitting the photographs of the victim, and Cooper's first assignment of error is overruled.
 {¶ 12} Cooper's second assignment of error asserts the following;
The Trial Court Erred In Failing To Grant The Defendant's Motion ForA Court-Appointed Expert.
 {¶ 13} In non-capital cases, there is no statutory authority requiring appointment of an expert for an indigent defendant. State v.Mathias (May 6, 1998), Seneca App. No. 13-97-35, 13-97-36, 13-97-37;State v. Weeks (1989), 64 Ohio App.3d 595; See R.C. 2929.024. However, this court has previously applied the factors used by the Ohio Supreme Court to resolve the appointment of a state-funded expert in a capital case under R.C. 2929.024 as a guide in a non-capital case. Mathias, supra. The factors the Ohio Supreme Court has set forth are: "(1) the value of the expert assistance to the defendant's proper representation at * * * trial; and (2) the availability of alternative devices that would fulfill the same functions as the expert assistance sought." Statev. Jenkins (1984), 15 Ohio St.3d 164, paragraph four of the syllabus;Mathias, supra. Furthermore, the indigent defendant bears the burden of demonstrating to the trial court the reasonableness of the request.Weeks, supra. Finally, we will not reverse the decision of the trial court to appoint or deny a state-funded expert absent an abuse of discretion. Mathias, supra.
 {¶ 14} In his motion for allotment of fees for an expert, Cooper asserts that his defense required the assistance of an expert to testify to the "cause of death of the alleged victim." Cooper's contention has always been that Jordan fell down a flight of stairs. However, at trial, six physicians who had examined Jordan all came to the conclusion that Jordan's injuries were not consistent with falling down a flight of twelve carpeted stairs. We would also note that nowhere in Cooper's motion did he present any facts that would show that a seventh expert would have come to a different conclusion than the six who testified. Furthermore, Cooper had the opportunity to cross-examine each of the physicians at trial. Consequently, we cannot say that the trial court abused its discretion in denying Cooper's request for a state-funded expert witness and Cooper's second assignment of error is overruled.
 {¶ 15} Cooper's third assignment of error asserts the following,
The trial court erred in determining that the defendant had committedthe worst form of the offense, and therefore sentencing the defendant,pursuant to State v. Mays, (2000) Ohio App.3d 177.
 {¶ 16} In reviewing a felony sentence, an appellate court is to review the propriety of the trial court's sentencing decisions and substitutes its judgment only upon finding clear and convincing evidence that, among other things, the sentence is otherwise contrary to law.State v. Martin (1999), 136 Ohio App.3d 355, 361, 1999-Ohio-814, construing R.C. 2953.08(G). Moreover, the trial court is in the best position to make the fact-intensive evaluations required by the sentencing statutes as the trial court has the best opportunity to examine the demeanor of the defendant and evaluate the impact of the crime on the victim and society. Id.
 {¶ 17} The trial court may only sentence the offender to the longest term if it finds that the defendant is a person who "committed the worst forms of the offense [or] * * * who pose[s] the greatest likelihood of committing future crimes." R.C. 2929.14(C). See also Statev. Cosgrove (May 8, 2001), Auglaize App. No. 2-2000-33, unreported. Moreover, the court must also give reasons for its findings on the record for sentencing an offender to the maximum term as listed in R.C.2929.14(C). R.C. 2929.19(B)(2)(d); see also State v. Edmondson (1999),86 Ohio St.3d 324.
 {¶ 18} In evaluating whether R.C. 2929.14 has been satisfied, the trial court should look to the factors laid out in R.C. 2929.12(B), (C), (D) and (E). Martin, 136 Ohio App.3d at 362. R.C. 2929.12(B) and (C) relate to the "seriousness of the conduct" which include, in relevant part, whether the victim of the offense suffered serious physical or psychological harm as a result of the offense, whether that harm was exacerbated because of the age of the victim and whether the offender's relationship with the victim facilitated the offense. R.C. 2929.12(D) and (E) relates to the "likelihood of the offender's recidivism" which includes, in relevant part, whether the offender had a prior criminal conviction and whether the offender shows genuine remorse. Accordingly, the sentencing court may use its discretion, utilizing its own personal judgment, to assign the weight given to each particular statutory factor. State v. Arnett (2000), 88 Ohio St.3d 208, 215-216,2000-Ohio-302.
 {¶ 19} In this case, the trial court filed the following "Findings in Support of Maximum Sentence" reflecting the trial court's statements at the sentencing hearing: "In support of its decision to impose the maximum sentence, the court finds the defendant committed the worst form of the offense and the defendant poses the greatest likelihood of committing future crime. The reasons for these findings are as follows:
1. The Defendant has a prior conviction as an adult[;] 2. The injury tothe victim was worsened by the age of the victim, to wit: 18 months[;]3. The victim suffered serious physical harm as a result of the offense,directly causing the victim's death[;] 4. Defendant's relationship withthe victim facilitated the offense, to wit: stepfather of the victim[;]5. The autopsy of the victim lists multiple abrasions and the "anatomicdiagnosis" includes 12 separate injuries as a result of blunt impacts tothe head and additional injuries to trunk extremities resulting fromblunt impact[;] 6. There were also remote injuries to the victimindicating likely prior abuse[;] 7. The defendant literally beat andshook this child to death, refuses to accept any blame for the child'sdeath and has exhibited absolutely no remorse for the results of hisactions.
 {¶ 20} We find that the trial court's detailed list of reasons, which address the considerations in R.C. 2929.12, sufficiently supports its findings under R.C. 2929.14(C) that Copper committed the worst form of the offense and posed the greatest likelihood of committing future crimes.[1] Consequently, Cooper's third assignment of error is overruled.
 {¶ 21} The state asserts the following assignment of error in its cross-appeal,
THE TRIAL COURT ERRED IN FINDING INVOLUNTARY MANSLAUGHTER AND CHILDENDANGERING TO BE ALLIED OFFENSES OF SIMILAR IMPORT.
 {¶ 22} R.C. 2941.25 governs the merging of allied offenses and provides,
(A) Where the same conduct by a defendant can be construed toconstitute two or more allied offenses of similar import, the indictmentor information may contain counts for all such offenses, but thedefendant may be convicted of only one. [But]
 (B) * * * Where his conduct results in two or more offenses of the sameor similar kind committed separately or with separate animus as to each,* * * the defendant may be convicted of all of them.
 {¶ 23} In State v. Rance (June 16, 1999), 85 Ohio St.3d 632,638-39, the Supreme Court held that when analyzing whether two crimes constitute allied offenses, "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other. And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus." See also State v. Green (April 19, 2001), Union App. No. 14-2000-26, 2001-Ohio-2197. Consequently, if the court finds that the offenses are not allied our inquiry under R.C. 2941.25 ends and the defendant may be convicted and sentenced for both offenses. Rance, supra. However, if we determine that the offenses are allied, the defendant may only be convicted and sentenced for one offense unless the two offenses were committed with separate animus. R.C. 2941.25(B);Rance, supra at 636; State v. Logan (1979), 60 Ohio St.2d 126
 {¶ 24} As noted above, in this case, Cooper was convicted of Involuntary Manslaughter via the predicate offense of Child Endangering and was also convicted of a separate count of Child Endangering. When determining whether R.C. 2941.25(A) has been met, several courts of appeals have concluded, based upon their reading of the Rance decision, that the elements of Involuntary Manslaughter with a predicate offense of Child Endangering and a separate count of Child Endangering do not line up in the abstract and as a result are not allied offenses. See for example, State v. Butts (March 7, 2000), Franklin App. No. 99-AP-576;State v. Parson (Dec. 22, 2000) Hamilton App. No. C-990404; State v.Iacona (Mar. 15, 2000), Medina App. No. CA 2891-M, affirmed93 Ohio St.3d 83, 2001-Ohio-1292.
 {¶ 25} The courts of appeals decisions noted above are reading theRance test, which refers to comparing the elements of both offenses, as requiring a double set of corresponding elements. In other words, an allied offense cannot be found unless the elements of both statutes correspond so that the commission of each offense constitutes commission of the other — as opposed to the commission of one offense constituting commission of the other.
 {¶ 26} For example, under this analysis, even if commission of the one offense of Involuntary Manslaughter by Child Endangering would necessarily comprise commission of the other offense of Child Endangering, the offenses still cannot be allied because the Child Endangering offense alone does not also include the additional homicide elements of Involuntary Manslaughter. See Butts, supra at 2; Iacona,supra at 23; cf. State v. Brown (1982), 7 Ohio App.3d 113.
 {¶ 27} We have found no case, including the Rance decision, in which the Supreme Court of Ohio has actually employed such an analysis in determining an issue of allied offenses or a related issue of lesser included offenses. As in Rance, in such cases, the Court has frequently examined the elements of both statutes — but simply for the purpose of ascertaining whether commission of either offense constitutes or is included within the other — not for the purpose of requiring thateach offense constitutes commission of the other.
 {¶ 28} Furthermore, an Ohio Supreme Court case subsequent toRance is consistent with our interpretation of Rance. In State v. Fears
(Sept. 8. 1999), 86 Ohio St.3d 329, 344, 1999-Ohio-111, the Court found that an aggravated robbery specification and a kidnapping specification were allied because ""implicit within every robbery (and aggravated robbery) is a kidnapping." While some courts have determined that Fears
only applies to the merger of aggravating specifications, the Ohio Supreme Court in State v. Yarbrough, held that "the analysis used to determine whether two aggravating circumstances merge is the same as that used to determine whether two offenses are allied offenses of similar import." (May 15, 2002), 95 Ohio St.3d 227, 2002-Ohio-2126 ¶ 124.
 {¶ 29} Consistent with the Fears decision, the Tenth District Court of Appeals in State v. Jackson, (Jan. 9, 2003), Franklin App. No. 02AP-289, 02AP-298, 2003-Ohio-37 ¶¶ 123, 111, found that convictions for gross sexual imposition, kidnapping and corruption of a minor were allied with three rape convictions because the offenses were not committed with separate animus and "the statutory elements of these crimes correspond to such a degree that the commission of the rapes resulted in the commissions of the other offenses." See also State v.Hay (Dec. 19, 2000), Union App. No. 14-2000-24 at *3, 2000-Ohio-1938
(finding that gross sexual imposition and rape are allied if they arise out of the same conduct); State v. Philpot (2001) 145 Ohio App.3d 231
(finding that theft is allied with aggravated robbery). Consequently, we conclude that Rance does not require a double set of corresponding elements. It is sufficient for "the commission of one crime to result in the commission of the other." Rance, supra.
 {¶ 30} In the present case, the State argues that Cooper was convicted of two separate subsections of R.C. 2919.22: (B)(1) for the separate Child Endangering count and either (A) or (B)(2) to support the predicate offense of Involuntary Manslaughter and therefore the offenses are not allied offenses of similar import. However, the general verdict returned in this case does not indicate which form of Child Endangering was relied upon as the predicate offense for Involuntary Manslaughter and we will not presume which subsection was intended simply in order to favor the State's argument against merger. As a result, we must conclude that the jury convicted Cooper on Count II of the indictment for abusing a child and may have convicted Cooper on Count I of the indictment for recklessly cruelly abusing a child resulting in that child's death. Absent a separate animus for each count, these offenses are allied as the statutory elements of these crimes correspond to such a degree that a conviction for cruelly abusing a child resulting in death must necessarily result in the abuse of a child.
 {¶ 31} The State next argues that even if the elements do correspond and the offenses are allied, the two offenses were committed with separate animus.
R.C. 2941.25(B), by its use of the term "animus," requires us toexamine the defendant's mental state in determining whether two or moreoffenses may be chiseled from the same criminal conduct. In this sense,we believe that the General Assembly intended the term "animus" to meanpurpose or, more properly, immediate motive.
State v. Logan (1979), 60 Ohio St.2d 126, 131. Establishing which animus is present for sentencing under R.C. 2941.25 is deferred to the discretion of the trial court. State v. Townsend (Dec. 21, 1998) Licking App. No. 3375 at *2; see generally, State v. Reynolds (1998),80 Ohio St.3d 670, 683. Consequently, a trial court sentence will not be set aside absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of judgment or law; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 32} The State asserts that the Coroner's testimony reflected two separate acts: first, the child was shaken and second, the child was hit against a hard surface. However, the record indicates that these acts were part of a single course of conduct and there is no evidence to indicate that Cooper had a separate motive or animus to shake and then also hit Jordan's head against a hard surface. In fact, the Coroner described Jordan's injuries as consistent with Shaken Baby Impact Syndrome which begins with a person shaking a child and ends with the person hitting a hard surface with the child.[2] On this evidence, we cannot find that the trial court abused its discretion in failing to find the offenses were committed with separate animus.
 {¶ 33} Based on the foregoing, we cannot find that the trial court erred when it found Cooper's convictions to be allied and sentenced him only for Involuntary Manslaughter. Consequently, the State's cross-appeal is overruled and the judgment and sentence of the trial court is affirmed.
Judgment affirmed.
BRYANT, P.J., and WALTERS, J., concur.
[1] Cooper relies on Mays, supra, to support his position that he did not commit the worst form of the offense because he called 911 to help Jordan, however, calling for help is just one factor to be considered when determining whether the defendant committed the worst form of the offense.
[2] While the State relies on a demonstration by the coroner of how the injuries occurred, we were not provided with a video-taped version of this demonstration.