[Cite as *State v. Hurley*, 2012-Ohio-310.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY


STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO. 12-11-01

     v.

JESSE I. HURLEY,                 O P I N I O N

     DEFENDANT-APPELLANT.


**Appeal from Putnam County Common Pleas Court**
**Trial Court No. 2010 CR 75**

**Judgment Affirmed**

**Date of Decision: January 30, 2012**


APPEARANCES:

    *Nicole M. Winget* **for Appellant**

    *Todd C. Schroeder* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Jesse Hurley ("Hurley") appeals the judgment of the Court of Common Pleas of Putnam County convicting him of felonious assault. On appeal, Hurley argues that the trial court abused its discretion when it denied his request for expert fees, that the trial court erred in failing to grant his Crim.R. 29 motion for acquittal, that the jury verdict of guilty was not supported by sufficient evidence, and that the trial court erred by imposing the maximum sentence. For the following reasons we affirm the judgment of the trial court.

{¶2} In October 2010, the Putnam County Grand Jury indicted Hurley on count I: felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. The complaint arose from an incident whereby Hurley was in the victim's sister's trailer, the victim arrived, told Hurley and his friends to leave, and before leaving the residence, Hurley attacked the victim with a kitchen knife. Subsequently, Hurley entered a not guilty plea to the charge.

{¶3} On December 15, 2010, the trial court denied Hurley's motion for expert fees. The case proceeded to a jury trial on December 28 and 29, 2010. At trial, the State presented the testimony of the victim, Nicole Kirk, Sergeant Brian Siefker, Deputy Mark Doster, Brent Hostettler, Sarah Tice, Joseph Kirk, and Victoria Kirk during its case in chief. Hurley moved for a Crim.R. 29 motion for

acquittal at the close of the State's evidence. The trial court denied this motion. The defense then presented Wesley Hostettler, Sarah Tice, and Jesse Hurley.

{¶4} Nicole Kirk ("Nicole" or "Victim") testified that she knows Hurley because he has been dating her sister, Sarah Tice ("Sarah"), sporadically for the past five or six years and is the father of Sarah's daughter. On October 3, 2010, at approximately 8:00 p.m., Nicole took her dog to visit Sarah's children. When she arrived at Sarah's trailer, an unfamiliar man was in the living room with Hurley, Sarah's three children were also there, although one was asleep on the couch; food and empty food boxes were spread all over the living room, and the living room was filled with cigarette and marijuana smoke. Nicole took the children to their rooms to put them to bed. When she came back into the living room, a third man was there "with a joint in his hand." Trial Tr., p. 30. Nicole testified that she took the "joint" from his hand and threw it out the door. She told the men to leave and that she was going to call the police. As the Defendant stood up to leave, the other two men walked out the door, and instead of leaving, the Defendant shut the door, pushed her down onto the couch, said that she was not going to get him in any trouble, and cut and scraped her stomach with a knife. She described the knife as having a black handle and a serrated edge. Nicole testified that Hurley made six or seven cuts on her stomach. Nicole screamed and her dog came out of the bedroom and started barking, showed her teeth, and snapped towards him so that

-3-

Hurley got up and ran out the door. When he ran out the door, she locked it and called the police.

{¶5} The State played the recording from Nicole's 911 telephone call. When the police officer arrived at the trailer, Nicole showed him the cuts on her stomach. The police officer took photos of the cuts, interviewed Nicole, and took her home.

{¶6} Sergeant Brian Siefker of the Putnam County Sheriff's Office testified that on October 3, 2010 he responded to a call reporting an incident with a knife. When he arrived at the trailer, he noticed that Nicole was upset, crying, and holding onto her side. Nicole showed him her wounds, which he photographed. He testified that the wounds were fresh and that blood was coming to the surface. He also testified that he retrieved marijuana from the trailer, close to where the men had been sitting. Sergeant Siefker attempted to locate the knife, but was unsuccessful.

{¶7} Deputy Mark Doster of the Putnam County Sheriff's Office testified that he was on duty and reported to the trailer court on October 3, 2010. Upon arriving at the trailer court, he went to lot 29, where the two men who were at Sarah's trailer that night, Brent Hostettler and Wesley Hostettler, live. Deputy Doster also located Hurley at that trailer and interviewed him. Hurley told him that he had been babysitting the children at Sarah's trailer when Nicole came over,

and they argued because of the marijuana smoke. He stated that Hurley did not have his jacket or his shoes on during the interview as they were still at Sarah's trailer.

{¶8} Brent Hostettler ("Brent"), one of the two other men at Sarah's trailer, testified that he, his brother Wesley, and Hurley voluntarily left the trailer together that night to smoke a cigarette. When they were outside smoking, Nicole locked the door and made a phone call saying that she was in need of assistance. Brent also testified that he and Hurley were smoking marijuana that night before Nicole came over.

{¶9} Sarah testified that she met Hurley in February, 2006, and that he is the father of her daughter. She testified that she is the victim's sister. She and Hurley have had a troubled relationship and went through two significant events that caused them to separate. One of the events occurred two weeks prior to the incident at issue, which caused her not to speak with Hurley for a couple of weeks. During this time, Hurley had expressed that he wanted Sarah to live with him, but she told him he first needed to earn her trust and be a responsible person. She testified that Hurley had "two strikes against him" at this point. Trial Tr., p. 140. As Sarah was scheduled to work on the evening of October 3, 2010, she let Hurley stay with the children. She stated that Hurley and the Hostettler brothers are

friends. Lastly, she testified that the knives she has in her home have black handles and serrated edges.

{¶10} Wesley Hostettler ("Wes") then testified on direct examination for the defense. Wes stated that he is friends with the Defendant. He stated that on October 3, 2010, his mother sent him to Sarah's trailer to tell Brent to come home. Brent was outside of Sarah's trailer smoking a cigarette and the two went into the trailer to talk to Hurley. Once they were in the living room, Nicole came out of the back bedroom, asked Wes his name, and he, Brent, and Hurley left the trailer together.

{¶11} Hurley testified that he was babysitting Sarah's children at her trailer on October 3, 2010, when Brent came over. The two were smoking marijuana when Nicole arrived. Nicole put the children to bed and came back out to the living room and told them that they had to smoke outside. When the three went outside to smoke, Nicole locked the door. Hurley then went to the Hostettler's trailer and called Sarah to ask her if he could kick in the door. He said he never stabbed or slashed Nicole with a knife. He also testified that he never argued with Nicole that evening. He testified that, since 2001, he has had three convictions for obstructing official business, one felony burglary conviction, one falsification conviction, and one attempted domestic violence conviction.

{¶12} The jury found Hurley guilty of felonious assault, and the trial court imposed an eight-year prison term. It is from this judgment Hurley appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED THE DEFENDANT-APPELLANT'S REQUEST FOR EXPERT FEES WHEN SUCH AN EXPERT WOULD BE USED TO CONTRADICT THE STATE'S THEORY OF THE CASE.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S CRIMINAL RULE 29 MOTION TO DISMISS ALL OF THE CHARGES AT THE CONCLUSION OF THE STATE'S CASE IN CHIEF.**

### Assignment of Error No. III

**THE JURY ERRED TO THE PREJUDICE OF THE DEFENDANT APPELLANT BY FINDING HIM GUILTY OF FELONIOUS ASSAULT.**

### Assignment of Error No. IV

**THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT IMPOSED THE MAXIMUM SENTENCES (sic) FOR HIS OFFENSES (sic) IN VIOLATION OF THE GUIDELINES SET FORTH IN ORC 2929.12.**

### Assignment of Error No. I

{¶13} In his first assignment of error, Hurley alleges that the trial court erred in denying his request for expert fees. Hurley requested $1,500 in funds to

be used in obtaining an expert to determine whether the wounds the victim suffered were consistent with the knife in question. He argues that essential to his defense was the implication that the wounds were self-inflicted in an effort by the victim to separate the defendant and the victim's sister, and absent the expert evidence, this is a "he-said, she-said case with very little, if any physical evidence." Appellant's Brief, p. 8.

{¶14} The State contends that the defense has failed to establish that expert fees were warranted in this case as Hurley failed to establish that the expert assistance is reasonably necessary. The State argues that the Defendant did not show that there is a reasonable probability that an expert would aid in his defense, and that the denial of the expert assistance would result in an unfair trial as required by *State v. Broom,* 40 Ohio St.3d 277 (1988).

{¶15} The statutory authority allowing the state to provide the funds for an indigent defendant's expert is R.C. 2929.024 which states that, in aggravated murder cases, the trial court shall authorize defendant's counsel to obtain the necessary services at the state's expense if the trial court finds that the services of experts are reasonably necessary for the defendant's representation. R.C. 2929.024; *Broom*; *State v. Jenkins*, 15 Ohio St.3d 164 (1984), paragraph four of the syllabus; *State v. Weeks*, 64 Ohio App.3d 595 (12th Dist. 1989). In noncapital cases, however, there is no authority mandating the payment of an indigent

defendant's expert fees. *State v. Mathias*, 3d Dist. Nos. 13-97-35, 13-97-36, 13-97-37, *2 (May 6, 1998), citing *Weeks*. Ohio courts have nonetheless applied the factors used by the Ohio Supreme Court in resolving requests for state-funded experts pursuant to R.C. 2929.024 in non-capital cases. The relevant factors in resolving the appointment of a state-funded expert are: (1) the value of the expert assistance to the defendant's proper representation at trial; and (2) the availability of alternative devices that fulfill the same functions as the expert assistance sought. *Id.*, citing *Broom* at 283, quoting *Jenkins* at paragraph four of the syllabus. The burden is on the defendant to demonstrate the reasonableness of the request. *State v. Cooper*, 3d Dist. No. 03-02-02, 2003-Ohio-4236, ¶ 13, *rev'd on other grounds*, citing *Weeks*. "At a minimum, the indigent defendant must present the trial judge with sufficient facts with which the court can base a decision." *Weeks* at 598-99. Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate. *Broom* at 283.

{¶16} The appropriate standard of review is an abuse of discretion. *Mathias*. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. See *State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 17-18, citing Black's Law Dictionary (8 Ed.Rev.2004) 11. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for

that of the trial court. *State v. Nagle,* 11th Dist. No. 99-L-089 (June 16, 2000), citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶17}** At the hearing on the matter of expert fees, the Defendant's attorney explained that the expert would look at the Victim's statement, the facts alleged, the knife in question, and the Victim's wounds in order to determine first, whether the knife could have inflicted these wounds, and second whether the wounds are consistent with the alleged events that gave rise to the Victim's wounds.[1]

**{¶18}** An application of the factors set forth above reveals that the trial court did not abuse its discretion in denying the request for a forensic scientist. Specifically, Appellant has failed to demonstrate the value and necessity of such testimony. Without the knife in question, the expert opinion would not be any more accurate or certain than that of a lay person. Bare assertions as to what the Defense hopes the expert opinion will show are insufficient to establish the value of the requested expert. Further, alternative methods are available to determine the accuracy of the State's theory. By thoroughly cross-examining the witnesses and the timing of the events, the defense could have explored whether the victim's wounds were self-inflicted as well as possible motives for such behavior. Where Defendant fails to show such need, we cannot find an abuse of discretion by the

---

[1] As Hurley's motion requesting expert fees is absent from the record, we are unable to address any arguments contained therein.

-10-

trial court in denying the appointment of an expert. Accordingly, Appellant's first assignment of error is overruled.

*Assignment of Error Nos. II and III*

{¶19} Due to the nature of Hurley's second and third assignments of error, we elect to address them together.

{¶20} Hurley argues that the trial court erred by denying his Crim.R. 29 motion to dismiss the charges at the close of the State's case-in-chief.[2] He also argues that the jury erred by finding him guilty as there was insufficient evidence to support such a finding. Specifically, Hurley asserts that the evidence was insufficient as there was no evidence that Hurley knowingly caused injury to the Victim, the alleged weapon was never found, the clothing had not been preserved from the night of the incident, and the only evidence of the attack was introduced through the Victim who had a motive to lie.

{¶21} Under Crim.R. 29(A), a court shall not order a judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Bridgeman*, 55 Ohio St.2d 261 (1978). A motion for acquittal tests the sufficiency of the evidence. *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist. 1996).

---

[2] A Crim.R. 29 motion is one for acquittal.

{¶22} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, citing *State v. Jenks,* 61 Ohio St.3d 259 (1991), *superseded by state constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89 (1997). Sufficiency is a test of adequacy, *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson*, 162 Ohio St. 486 (1955), *superseded by state constitutional amendment on other grounds as stated in Smith.*

{¶23} We hold that the evidence was sufficient to establish Hurley's guilt of felonious assault. Hurley was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides:

> **(A) No person shall knowingly do either of the following:**
>
> * * *
>
> **(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.**

{¶24} A deadly weapon is defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for

use as a weapon, or possessed, carried, or used as a weapon." Hurley does not claim that a knife is not a deadly weapon. Rather, he claims that there is insufficient evidence that a knife was used as it was never found. Although it would have been beneficial for the State to introduce the knife, the failure to do so is not fatal. The testimony at trial established that a knife was used as a weapon. The Victim's testimony that Hurley used a knife to slice her stomach was supported by the injuries she sustained as evidenced in the photographs. The recording of the 911 phone call was consistent with the Victim's story. The Victim's description of the weapon matched Sarah's description of her kitchen knives. The officers' testimony at trial established the difficulty of locating such a weapon in a trailer court.

{¶25} The State also presented sufficient evidence to establish that Hurley did knowingly cause the victim's wounds. The victim's testimony as well as Sarah's testimony was that Hurley was compelled to prevent Nicole from calling the police. Sarah's testimony established that Hurley knew this may have been one of his last chances to prove to Sarah that he was reliable and trustworthy. When Nicole threatened to call the police on Hurley due to the drug activity taking place in front of the children, Hurley needed to prevent police intervention if he was going to succeed in earning Sarah's trust. In an attempt to prevent Nicole from calling the police, he attacked her.

{¶26} Further, we note that the lack of the Victim's shirt does not prevent a finding of sufficiency as the shirt is not necessary to establish any of the elements of felonious assault.

{¶27} We find that the State presented sufficient evidence such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven. Viewing the evidence in the light most favorable to the prosecution, we hold that the evidence was sufficient to sustain the verdict. Accordingly, Hurley's second and third assignments of error are overruled.

*Assignment of Error No. IV*

{¶28} In his fourth assignment of error, Hurley argues that the trial court erred by imposing the maximum statutory prison term. Specifically, he contends that the factors set forth in R.C. 2929.12 are not present. Hurley asserts that there is no indication that his conduct was more serious than similar offenses as there was minimal injury to the victim who did not require professional medical treatment, and the weapon was a kitchen knife. Hurley asserts that since this was not the worst form of the offense, the maximum prison sentence should not have been imposed.

{¶29} An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Daughenbaugh,* 3d Dist. No. 16-07-07, 2007-

Ohio-5774, ¶ 8, citing *State v. Carter,* 11th Dist. No. 2003-P-0007, 2004-Ohio-1181. A meaningful review means "that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law."[3] *Daughenbaugh,* citing *Carter* at ¶ 44; R.C. 2953.08(G).

{¶30} The trial court has full discretion to sentence an offender to any term of imprisonment within the statutory range without a requirement that it make findings or give reasons for imposing the maximum sentence, more than the minimum sentence, or ordering sentences to be served consecutively. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph seven of the syllabus.

{¶31} When sentencing an offender, the trial court must consider the factors set forth under R.C. 2929.12 (D) and (E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism. R.C. 2929.12(A); *see also State v. Ramos,* 3d Dist. No. 4-06-24, 2007-Ohio-767, ¶ 25. However, the trial court is not required to make specific findings of its consideration of the factors. *State v. Kincade,* 3d Dist. No. 16-09-20, 2010-Ohio-1497, ¶ 8, citing *State v. Arnett,* 88 Ohio St.3d 208 (2000). Nor is the trial court

---

[3] We note that the Supreme Court of Ohio's plurality opinion in *State v. Kalish,* 120 Ohio St. 3d 23, 2008-Ohio-4912, established a two-part test utilizing an abuse of discretion standard for appellate review of felony sentencing decisions under R.C. 2953.08(G). While we cite to this Court's precedential clear and convincing review standard adopted by three dissenting Justices in *Kalish,* we note that our decision in this case would be identical under the *Kalish* plurality's two-part test.

required to state on the record that it has considered the statutory criteria or even discussed them. *State v. Foust*, 3d Dist. No. 3-07-11, 2007-Ohio-5767, ¶ 27.

{¶32} Contrary to Hurley's assertions, the trial court's imposition of the maximum sentence was not based on the seriousness of his offense, but rather was based on Hurley's "significant likelihood of recidivism, . . . prior criminal adjudications, . . . pattern of criminal activity and criminal violent activity, and that [he] has shown no remorse for his actions." Judgment Entry, Docket No. 78. In light of the nature of the instant offense, Hurley's prior criminal convictions, and likelihood of recidivism, we find that the trial court's imposition of the maximum term of imprisonment was not clearly and convincingly contrary to law.

{¶33} Accordingly, we overrule Hurley's fourth assignment of error.

{¶34} Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**

**WILLAMOWSKI, J., Concurring Separately.**

{¶35} I concur fully with the majority opinion as to assignments of error one, two, and three. However I write separately as to the fourth assignment of

error to emphasize the appropriate standard of review. The standard of review for sentences was set forth in the plurality opinion of *Kalish*, supra. In *Kalish*, four panel members noted that R.C. 2953.08(G) requires that appellants must meet a clearly and convincingly contrary to law standard of review when reviewing a sentence.[4] For example, if the sentencing court failed to consider R.C. 2929.12, the standard of review would be whether appellant has shown that the sentence was clearly and convincingly contrary to law. However, if the appeal is based upon alleged improper application of the factors in R.C. 2929.12, four panel members in *Kalish* would require review using an abuse of discretion standard as specifically set forth in R.C 2929.12.[5]

{¶36} I would find that Hurley has not clearly and convincingly demonstrated that the sentence is contrary to law. In other words, Hurley did not show that the trial court did not consider the factors set forth in R.C. 2929.12. I would further find that Hurley did not show that the trial court abused its discretion in how it applied the factors in R.C. 2929.12. In light of the nature of the instant offense, Hurley's prior criminal conviction, and the likelihood of recidivism, I find that the trial court's imposition of the maximum term of imprisonment was not an abuse of discretion. The trial court's judgment was not

---

[4] Justices Pfeifer, Lundberg Stratton, Lanzinger, and Judge Willamowski, sitting by assignment, all reached this conclusion.

[5] Justices O'Connor, Moyer, O'Donnell, and Judge Willamowski, sitting by assignment, concurred in this position, although the first three would use both standards of review in all cases.

clearly and convincingly contrary to law in that it did consider the factors set forth in R.C. 2929.12.