[Cite as *State v. Alltop*, 2014-Ohio-1695.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2013-06-018 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 4/21/2014 |
| - vs - | : | |
| | : | |
| TIMOTHY M. ALLTOP, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 13CRI00047

Jess C. Weade, Fayette County Prosecuting Attorney, James B. Roach, 110 East Court Street, Washington C.H., Ohio 43160, for plaintiff-appellee

Rose & Dobyns Co., L.P.A., Blaise Underwood, 97 North South Street, Wilmington, Ohio 45177, for defendant-appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Timothy M. Alltop, appeals his conviction in the Fayette County Court of Common Pleas for aggravated robbery.

{¶ 2} On the evening of February 11, 2013, Phillip Armbrust was using his laptop computer in the cab of his truck in the parking lot of the Washington Court House public library. At approximately 10:30 P.M., two men approached Armbrust's truck, pulled him out

of the driver's side door, and struck and kicked him repeatedly, resulting in several fractures in the bones of his face. The two men then removed Armbrust's wallet from his jacket pocket, and fled on foot with his wallet, computer, and computer accessories. Armbrust did not see the face of his assailants, but he later told police that both men were about six feet tall, and wearing brown jackets, gloves, and ski masks.

{¶ 3} When police conducted a search of the surrounding area, they found a brown jacket with a ski mask stuffed in the sleeve, and the computer and missing accessories. A K-9 unit began a "disturbance tracking" from the spot where the computer was found, and followed the scent trail until the scent was lost at a railroad trestle crossing a creek. Once on the other side of the creek, the K-9 unit reengaged the scent trail and followed it to a couple of blocks from where appellant lived with his co-defendant, Brent Adams. No suspects were apprehended that evening.

{¶ 4} On February 21, 2013, a warrant was issued for appellant's arrest, and on February 23 he turned himself in at the Fayette County Jail. At that time, appellant's clothing, boots, and personal items were placed in a bag and locked in an individual locker located in the jail's limited-access property room. On the morning of February 25, Officer Thomas Queen visited the jail to execute a search warrant to collect an oral swab of appellant for DNA testing. Acting on a tip that appellant's boots were likely stained with blood from kicking Armbrust, Officer Queen also collected the boots while at the jail. He then forwarded the boots, appellant's oral swab, the brown jacket discovered on the evening of the attack, and known DNA samples from Adams and Armbrust to the Bureau of Criminal Investigation ("BCI") for a DNA analysis.

{¶ 5} On March 22, 2013, appellant was indicted for aggravated robbery, robbery, felonious assault, and theft. Prior to trial, appellant filed a motion for an appropriation of funds to retain a DNA expert. After a hearing, the trial court overruled the motion for funds.

Appellant also moved to suppress the DNA testing done on his boots on the ground that both the seizure of the boots and the subsequent testing were done without a warrant. After a hearing, the trial court overruled the motion to suppress.

{¶ 6} A jury trial was held on June 11, 2013. At trial, Raymond Peebles, a forensic scientist in the DNA section of the BCI laboratory, testified that DNA samples taken from the brown jacket were consistent with the known DNA sample taken from appellant's oral swab.[1] In addition, Abbie Schwaderer, also a forensic scientist in the DNA section of the BCI laboratory, testified that a DNA sample taken from a red-brown stain on one of appellant's boots was consistent with Armbrust's known DNA sample.[2] The state argued to the jury that this evidence, along with testimony regarding the K-9's tracking of the perpetrators' scent trail to a location near appellant's residence, was sufficient to convict appellant. That same day, the jury returned a verdict finding appellant guilty of aggravated robbery, robbery, felonious assault, and theft.

{¶ 7} A sentencing hearing was held on June 12, 2013. At the hearing, the trial court found that appellant's offenses were allied offenses of similar import, and the state elected to merge the robbery, felonious assault, and theft offenses into the aggravated robbery offense. Appellant was sentenced to ten years in prison. He now appeals, raising two assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR APPROPRIATION OF FUNDS FOR A DNA/FORENSICS EXPERT.

---

1. For reasons discussed at trial, BCI scientists conducting a DNA comparison use a statistic to speak to how rare a DNA profile is, rather than to the degree of certainty of a match. The statistic speaks to how many people a scientist would need to test before he could expect to see a particular profile again.

2. Schwaderer testified that a scientist would need to test 193.6 quintillion people to find a DNA profile similar to Armbrust's. In effect, this meant that the likelihood the DNA sample from appellant's boot belonged to someone other than Armbrust was 1 in 193.6 quintillion.

{¶ 10} Appellant argues that his due process rights were violated when the trial court denied his motion for an appropriation of funds for a DNA expert.

{¶ 11} At the hearing on his motion, appellant first argued it would be helpful to defense counsel to have an expert to consult with regarding the cross-examination of the state's DNA experts. Appellant also argued that additional DNA testing was needed to show there may be DNA present from other individuals inside the boot upon which Armbrust's DNA was found. The trial court overruled appellant's motion on the ground he failed to make a particularized showing both of a reasonable probability that the requested expert would aid in his defense, and that a denial of the requested expert assistance would result in an unfair trial. In so ruling, the trial court noted that the requested DNA analysis of the inside of the boot would not determine the outcome of the case.

{¶ 12} In noncapital cases, there is no authority requiring the trial court to authorize an appropriation of funds for a defendant's expert fees.[3] *State v. Hurley*, 3d Dist. Putnam No. 12-11-01, 2012-Ohio-310, ¶ 15, citing *State v. Weeks*, 64 Ohio App.3d 595, 598 (12th Dist.1989). Thus, the standard to be applied is abuse of discretion, and this court must determine whether the trial court abused its discretion in overruling appellant's motion. *Weeks* at 598.

{¶ 13} In *State v. Mason*, 82 Ohio St.3d 144 (1998), the Ohio Supreme Court held that:

> due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the

---

3. By contrast, in capital cases, R.C. 2929.024 does require a trial court to authorize investigation services, experts, or other services that are reasonably necessary for the proper representation of a defendant charged with aggravated murder.

requested expert would aid in his defense, and (2) that denial of
the requested expert assistance would result in an unfair trial.

*Id.* at 150.

{¶ 14} Consistent with this standard, courts have considered two factors to determine whether a trial court abused its discretion in denying an appropriation of funds for an expert: the value of the expert assistance to the defendant's proper representation at trial, and the availability of other means to perform the same functions as an expert. *State v. Vore*, 12th Dist. Warren No. CA2011-08-093, 2012-Ohio-2431, ¶ 53; *see also State v. Jenkins*, 15 Ohio St.3d 164, 193 (1984). The defendant bears the initial burden of establishing the reasonableness of his request, and must present the trial court with sufficient facts upon which the court can base its decision. *Weeks* at 598, citing *State v. Scott*, 41 Ohio App.3d 313, 315 (8th Dist.1987). If the defendant fails to make "a showing of demonstrable prejudice," the trial court can legitimately refuse funds. *Mason*, 82 Ohio St.3d at 151.

{¶ 15} Appellant failed to show that the assistance of an expert would be of any particular value to his representation at trial. He did not cite to any facts that called into question the integrity of the state's DNA samples, nor did he identify why the want of an expert could not be overcome by counsel's diligent research. He simply argued that it would be helpful to have someone to consult with to know what questions to ask on cross-examination. Asserting the mere possibility that an expert would be of assistance did not satisfy appellant's initial burden to establish the reasonableness of his request. *See State v. Campbell*, 90 Ohio St.3d 320, 328 (2000).

{¶ 16} Further, other means were available to appellant to serve the same function as an expert. "DNA evidence is not 'novel' to Ohio courts." *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 80. Hence, there are ample materials available by which resourceful counsel can educate himself sufficiently to formulate an effective cross-examination. *See,*

*e.g.*, Annotation, *Admissibility of DNA Identification Evidence*, 84 A.L.R.4th 313 (1991) (providing a comprehensive primer on the use of DNA evidence, as well as a lengthy compendium of other resources).

{¶ 17} Lastly, the denial of funds for an expert witness does not impact the fairness of the trial where the expert's testimony will not be outcome determinative. *State v. Huston*, 12th Dist. Clinton No. CA2010-12-020, 2011-Ohio-3912, ¶ 8-11. Appellant sought additional testing to show the presence of DNA from other individuals inside appellant's boot. However, the trial court rightly noted that such evidence would not be outcome determinative here because, as appellant's counsel effectively demonstrated at trial, DNA testing cannot prove who was wearing the boots at the time Armbrust's DNA was transferred to them.

{¶ 18} Having reviewed the record, we find no particularized showing by appellant that denial of the requested expert assistance would result in an unfair trial. Nor do we find that the denial resulted in an unfair trial. Cross-examination of the state's forensic expert witnesses demonstrated that defense counsel adequately understood DNA testing. He was able to ask pointed questions in regards to the DNA of other unknown individuals on the brown jacket, the inconclusive results of the DNA testing on the ski mask, and the inability of DNA testing to determine how long appellant's DNA had been on the jacket, or who was wearing appellant's boots when Armbrust's DNA was transferred to them.

{¶ 19} For the foregoing reasons, we find that the trial court did not abuse its discretion in denying appellant's motion for appropriation of funds for an expert witness. Appellant's first assignment of error is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 22} Appellant argues that his Fourth Amendment right to be free of unreasonable

searches and seizures was violated when the trial court denied his motion to suppress all evidence obtained as a result of the DNA testing of his boots.

{¶ 23} At the suppression hearing, appellant argued that even though the boots were in the jail at the time they were seized, he retained his expectation of privacy in them because they remained his property. On this ground, appellant argued that the "search incident to lawful arrest" exception to Fourth Amendment did not apply, and that the state was required to obtain a warrant to send the boots to BCI for testing. The trial court overruled appellant's motion, noting that appellant was wearing his boots at the time of his arrest, and that the decision of the United States Supreme Court in *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234 (1974), and its progeny allow warrantless searches and seizures involving property on a defendant's person at the time of lawful arrest. Appellant now contends that *Edwards* has been superseded by a "special needs" analysis for warrantless searches justified by administrative ends.

{¶ 24} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Quinn*, 12th Dist. Butler No. CA2011-06-116, 2012-Ohio-3123, ¶ 11, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court is in the best position to resolve questions of fact, and a reviewing court must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Quinn* at ¶ 11. "After accepting the trial court's factual findings as true, the appellate court must then determine, as a matter of law, and without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard." *Id.*

{¶ 25} "It is well established that searches conducted without a warrant are per se unreasonable, subject to certain 'jealously and carefully drawn' exceptions." *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, ¶ 10, quoting *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253 (1958). Therefore, review of the trial court's decision to allow the

evidence obtained by the state when it sent appellant's boots to BCI for DNA testing without a warrant requires this court to determine whether the state's action fits within one of these exceptions.

{¶ 26} At the outset, we address appellant's argument that *Edwards* has been superseded by a "special needs" analysis for warrantless searches justified by administrative ends. The cases to which appellant refers discuss exceptions that have been developed in Fourth Amendment jurisprudence for circumstances either beyond "the normal need for law enforcement," or involving the execution of an administrative warrant. *See Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080-81 (2011), citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S.Ct. 2386 (1995), and *Camara v. San Francisco*, 387 U.S. 523, 535-538, 87 S.Ct. 1727 (1967) (observing that *Vernonia* considers the "special need" of deterring drug use in public schools, and *Camara* discusses an administrative warrant to inspect residential premises to assure compliance with housing code). But the United States Supreme Court has been very clear that "those exceptions do not apply where the officer's purpose [for conducting a search] is not to attend to the special needs or to the investigation for which the administrative inspection is justified." *Ashcroft* at 2081.

{¶ 27} Here, the purpose of the search was neither to attend to special needs beyond the normal need for law enforcement, nor to execute an administrative warrant. Rather, the search was conducted incident to appellant's arrest. A "search incident to arrest" is a well-established exception to the general rule against warrantless searches that allows arresting officers to search both an arrestee's person and the area within the arrestee's immediate control. *Smith*, 124 Ohio St.3d at ¶ 11, citing *Chimel v. California*, 395 U.S. 752, 762-763, 89 S.Ct. 2034 (1969). "The exception derives from interests in officer safety and evidence preservation that are *typically implicated in arrest situations*." *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710 (2009). (Emphasis added.) Thus, *Edwards* is determinative of the

instant issue.

{¶ 28} In *Edwards*, the defendant was lawfully arrested in Lebanon, Ohio and charged with attempting to break into a post office building. *Id.* at 801. Soon after the defendant was taken to the local jail, investigation of the crime scene led authorities to believe that the perpetrator of the offense would likely have paint chips on his clothing. *Id.* The morning after the defendant's arrest, police confiscated his clothing and sent it to a laboratory for testing. *Id.* at 802. At trial, the prosecution was allowed to present evidence that the testing revealed the presence of paint chips on the defendant's clothing. *Id.*

{¶ 29} The United States Supreme Court granted certiorari to determine "whether the Fourth Amendment should be extended to exclude from evidence certain clothing taken from [the defendant] while he was in custody at the city jail approximately 10 hours after his arrest." *Edwards*, 415 U.S. at 801. In holding that Fourth Amendment rights should not be so extended, the Supreme Court found the search incident to arrest exception to permit that "clothing or other belongings [of an accused] may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis * * *." *Id.* at 804, citing *United States v. Caruso*, 358 F.2d 184, 185 (2d Cir.1966). "This was no more than taking from [the accused] the effects in his immediate possession that constituted evidence of a crime." *Id.* at 805. Hence, the Supreme Court concluded that "'[w]hile the legal arrest of a person should not destroy the privacy of his premises, it does – for at least a reasonable time and to a reasonable extent – take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.'" *Id.* at 808-809, quoting *United States v. DeLeo*, 422 F.2d 487, 493 (1st Cir.1970).

{¶ 30} The circumstances of the present case are similar. Appellant was arrested in the late afternoon of Saturday, February 23, 2013, and detained at the Fayette County Jail. Immediately upon his detention, appellant's clothing, boots, and personal effects were

bagged up and placed in a locker in the jail's property room. On the morning of Monday, February 25 – less than 48 hours after appellant's arrest and detention – Officer Queen, acting on a tip received from appellant's co-defendant and housemate, retrieved appellant's boots from the jail and sent them to BCI for testing. "[I]t is difficult to perceive what is unreasonable about the police's examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest." *Edwards*, 415 U.S. at 806.

{¶ 31} Accordingly, we find the trial court did not err in denying appellant's motion to suppress. Appellant's second assignment of error is therefore overruled.

{¶ 32} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.