[Cite as *State v. Yancy*, 2011-Ohio-6274.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 96527 and 96528**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEVON L. YANCY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas

Case Nos. CR-540684 and CR-540324

**BEFORE:** S. Gallagher, J., Boyle, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 8, 2011

**ATTORNEY FOR APPELLANT**

Jeffrey P. Hastings
50 Public Square
Suite 3300
Cleveland, OH    44113-2289

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: Brad S. Meyer
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH    44113

SEAN C. GALLAGHER, J.:

**{¶ 1}** Appellant-defendant Devon Yancy appeals his conviction following a trial in the Cuyahoga County Common Pleas Court Case Nos. CR-540324 and CR-540684. For the following reasons, we affirm.

**{¶ 2}** On April 2, 2010, the victims' home, located in Shaker Heights, Ohio, was broken into during the middle of the night. The kitchen-window screen was slashed, allowing the perpetrator to open the screen and the window. The homeowner thought the glass part of the window was unlocked at the time. Several items — two cell phones, a wallet, a purse, garage door openers, and key sets — that were sitting on the kitchen counter beneath the window were stolen. One of the cars, a maroon Infiniti, was also taken. A white, polo baseball cap was found in the mud room, located near the kitchen. The hat did not belong to anyone living in the house. DNA consistent with Yancy's, along with two other unknown individuals, was found inside the hat.

**{¶ 3}** Almost two weeks later, East Cleveland police officers noticed the maroon Infiniti speeding. After determining that the plate was registered to a Buick, the officers initiated a stop. The driver, however, fled, causing a high-speed pursuit. The pursuing officers momentarily lost track of the Infiniti and ended up guessing as to which direction it went. Guessing correctly, they found the Infiniti stopped and parked on the side of the road. Yancy was about five feet from the car and walking away. The officers detained Yancy as he was the only individual in the vicinity of the car. The license plates were registered to

Yancy's father. Yancy initially gave the officers a false name. Neither of the officers could identify Yancy as the driver. The officers arrested Yancy because he gave a false identification and birth date to the officers. Once Shaker Heights police were notified of the recovered stolen Infiniti, Yancy was implicated in the burglary.

{¶ 4} Yancy was indicted in two separate cases. In Case No. CR-540324, Yancy was charged with one count of burglary with a notice of prior conviction and repeat violent offender specifications, and two counts of theft for the events involving the Shaker Heights home. In Case No. CR-540684, Yancy was charged with two counts of failure to comply, one count of receiving stolen property, and one count of falsification for the events involving the East Cleveland police chase.

{¶ 5} During the trial, the state introduced other-acts evidence stemming from Yancy's 2003 burglary conviction in an attempt to use the similarities between the 2003 and 2010 burglaries to identify Yancy as the perpetrator of the 2010 burglary. Identity was an issue in the case. The state introduced evidence that Yancy committed three burglaries in 2003 where he slit a screen of a window in a home in an older east Cleveland suburb and grabbed items commonly found on a kitchen counter that were underneath the window. The trial court admitted this other-acts evidence over Yancy's objection.

{¶ 6} The jury ultimately found Yancy guilty of receiving stolen property, failing to comply, falsification, burglary, theft, and aggravated theft. The court found Yancy guilty on

the repeat violent offender ("RVO") and notice of prior conviction ("NPC") specifications that accompanied the burglary charge. Yancy waived his right to a jury trial on the NPC and RVO specifications. The court sentenced Yancy to a cumulative term of imprisonment of nine years.

{¶ 7} It is from this conviction that Yancy timely appeals, raising three assignments of error. His first assignment of error provides as follows: "The trial court erred in permitting the state's use of [Evid.R.]404(B) evidence because the prejudicial effect of the defendant's prior conviction clearly outweighed its probative value, and was inadmissable character evidence." Yancy's first assignment of error is overruled.

{¶ 8} The trial court has broad discretion in the admission or exclusion of evidence, and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should be slow to interfere. *State v. Hancock*,108 Ohio St.3d 57, 76, 2006-Ohio-160, 840 N.E.2d 1032. The term "abuse of discretion" means "an unreasonable, arbitrary, or unconscionable action." *State ex rel. Doe v. Smith*, 123 Ohio St.3d 44, 47, 2009-Ohio-4149, 914 N.E.2d 159. It is "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." (Citations and quotations omitted.) *State v. Hancock*, 108 Ohio St.3d at 77.

{¶ 9} Evid.R. 404(B) codifies "an exception to the common law with respect to evidence of other acts of wrongdoing" and must be construed against admissibility. *State v.*

*Broom* (1988), 40 Ohio St.3d 277, 282-283, 533 N.E.2d 682. The standard for determining admissibility of such evidence is strict. Id. Evid.R. 404(B) prohibits the use of evidence of other crimes, wrongs, or acts of the accused to show that the accused committed the crime with which he is now charged. "The rule lists purposes for which evidence of prior [acts] may be presented, but the list is illustrative rather than exhaustive because the rule forbids only the use of prior-[acts] evidence to show that since the defendant committed crimes in the past, probably he committed the crime of which he is now accused * * *." *U.S. v. Edwards* (C.A.7, 2009), 581 F.3d 604, 608. Other-acts evidence may be admissible for other purposes, such as showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Gus*, Cuyahoga App. No. 85591, 2005-Ohio-6717, ¶ 18. Despite this exception, even when other-acts evidence is otherwise admissible, it is limited by relevancy or unfair prejudice considerations. Evid.R. 402, 403. Other-acts evidence is admissible if there is substantial proof that the defendant committed the other act. *State v. Carter* (1971), 26 Ohio St.2d 79, 269 N.E.2d 115, paragraph two of the syllabus.

{¶ 10} In other words, Ohio courts must undertake a three-step analysis [1] in determining whether to admit the other-acts evidence. Courts must determine whether the

---

[1] Although we describe the analysis in terms of a three-step approach, relevancy is always an issue when determining whether evidence in general is admissible. The same approach can also be described as a two-step approach, assuming relevancy, that involves the proper purpose and unfair prejudice inquiries.

proponent of the other-acts evidence demonstrated that (1) the other-acts evidence is offered for a specific proper purpose, (2) the evidence is relevant, and (3) the probative value of the evidence substantially outweighs the potential for unfair prejudice. Finally, if the court determines that all three elements should be construed in favor of admissibility, the court must instruct the jury, if requested, that the evidence is only to be considered for the proper purpose for which it was admitted. See id. A finding against admissibility for any of the factors necessitates exclusion of the other-acts evidence.

{¶ 11} We note that it is insufficient to seek to admit the evidence with the "shot-gun-style approach" of citing Evid.R. 404(B) and all the potential purposes.[2] The burden of showing the proper purpose rests with the proponent of the evidence, and since Ohio courts must presume the other-acts evidence is excluded, the proponent must identify the specific purpose for which the evidence is being introduced. See id.

{¶ 12} Turning to the facts of this case, the state improperly sought to introduce the other-acts evidence of Yancy's prior convictions for burglary "to show the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in the commission of the indicted charges." The state then corrected the problem by filing a

---

[2] The other-acts jury instruction given in this case listed all the potential purposes for which the other-acts evidence could be considered. We note that the better practice is to limit the instruction to the stated purpose for which the other-acts evidence was introduced. The standard Ohio jury instruction, 2 OJI-CR 401.25, echoes this practice as it specifically indicates to use "the appropriate alternative," referring to the list of proper purposes, when giving the instruction.

"supplemental authority" and limiting the purpose of introducing the other-acts evidence to identifying the defendant as the perpetrator of the 2010 burglary. The state argued that the evidence of Yancy's 2003 burglaries was relevant to demonstrate that Yancy was the perpetrator of the 2010 burglary because of the similarities between the crimes, rather than being introduced to prove Yancy's propensity to commit crimes. We therefore will constrain our analysis to the identity exception with the observation that identity was a genuine issue at trial. See *State v. Williams*, Cuyahoga App. No. 94965, 2011-Ohio-5650, at ¶ 55.

{¶ 13} Other-acts evidence is admissible pursuant to the "common scheme, plan, or system" exception in two instances, the first of which is irrelevant to the current appeal: (1) the other acts are part of one criminal transaction and are inextricably related to the charged crime; or (2) the common scheme, plan or system tends to prove identity of the perpetrator. Id. at 72-73.

{¶ 14} "If evidence is offered to show identity, then the proponent of the evidence is trying to prove the identity of the criminal with evidence of other acts committed by the defendant that are so similar to the present crime that a single person, the defendant, must have committed both crimes." Id. at ¶ 54. This can also be described as the defendant's modus operandi or behavioral footprint and can be compared to the defendant's behavioral footprint for the crime at issue to identify the defendant as the perpetrator of the later crime. Id.

{¶ 15} The quintessential example of a behavioral footprint is illustrated in *State v. Bey*, 85 Ohio St.3d 487, 1999-Ohio-283, 709 N.E.2d 484. In *Bey*, the Ohio Supreme Court held that the other-acts evidence was admissible in a homicide case because both victims were "businessmen who were killed at their place of business, both died after being stabbed with a knife in the chest, both men had their trousers removed and their shoes were placed next to their bodies, and although both businesses were robbed, jewelry was left on each person." *Williams*, 2011-Ohio-5650, at ¶ 55. Such similar, specific facts could be used to identify the perpetrator.

{¶ 16} In the current case, the state sought to introduce the other-acts evidence of Yancy's prior burglaries because in the prior burglaries, the perpetrator broke into the victim's house in an east Cleveland suburb by cutting the screen of a window. The stolen items in the prior and current cases were keys, purses, wallets, and one of the victim's cars, and the burglaries occurred during the same time of day, the overnight hours. Although the state argues that all the items were within reach of the window, allowing the perpetrator to remain outside the home, the most condemning piece of evidence found was Yancy's white baseball cap, which was inside the house and nowhere near the kitchen window. The state does not address this discrepancy.

{¶ 17} In support of its position, the state analogizes Yancy's case to *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311. *Wogenstahl*, however, is

distinguishable. First, the Ohio Supreme Court found that "both [crimes] involved people [appellant] had been with or visited with the day before, and in both offenses he utilized some [ruse] to get the occupant out of the home so he could commit the burglary. In [both] cases there was a sign of force and, finally, he used an alibi when he was confronted that he had gone straight home and gone to bed and didn't know anything about the burglary." (Internal quotation omitted.) Id. at 365. The similarities were thus more than general traits of a crime; the similarities were specific to the defendant.

{¶ 18} Second, and more important, the indictment in *Wogenstahl* included a prior aggravated felony specification that necessitated proof that the defendant was convicted of a prior felony. Wogenstahl's only prior conviction was the burglary, making the other-acts evidence otherwise relevant to the prosecution's burden of proof on the specification. Id. at 366.

{¶ 19} In this case, Yancy waived his right to a jury trial on the repeat violent offender and notice of prior conviction specifications. Therefore, the state did not need to prove the past conviction during the jury portion of the trial. The only relevancy of the other-acts evidence in this case was to establish identity. On this point, the trial court erred in admitting the other-acts evidence of Yancy's prior burglaries because the state offered no specific traits from the 2003 burglaries that could be used to identify Yancy as the perpetrator of the 2010 burglary.

{¶ 20} Contrary to the state's argument, the facts that a perpetrator gained access to an older, Shaker Heights home through a window; that the easily accessible items commonly found on a kitchen counter — wallets, purses, and keys, leading to the car theft, were stolen; and that the burglary occurred in the overnight hours do not identify Yancy as the perpetrator of every similar burglary in every east side suburb of Cleveland. The state's similar facts are traits of a burglary in general and do not provide a "behavioral footprint" with which to identify Yancy as the perpetrator of the crime. This is unlike *Wogenstahl* where the defendant used the exact same ruse to get the victims from the home and provided the exact same excuse when confronted by police. *Wogenstahl*, 75 Ohio St.3d at 365.

{¶ 21} The present case is similar to *State v. Knuckles*, Cuyahoga App. No. 96078, 2011-Ohio-4242, where this court held that the "evidence of [the defendant's] other crimes was not related to the charged offense and did not share any distinct features that would establish an identifiable scheme[,]" when the only similarities presented were that the defendant "broke into the home of someone he did not know, usually through a window, with intent to steal and ended up fighting with the homeowner in two [of the cases]." Id. The evidence merely served to demonstrate the defendant's propensity to commit burglaries, and we found the trial court erred in admitting the other-acts evidence as that was "precisely the "other acts" evidence Evid.R. 404(B) seeks to exclude." Id.

{¶ 22} The same is true under the facts of the current case. The similarities identified by the state were that the crime was perpetrated by slicing the window screen to unlatch the window and items commonly left on a kitchen counter were stolen. Nothing specifically identifies a behavioral footprint linking a single perpetrator with the 2003 and the 2010 burglaries. For this reason, we agree with Yancy that the trial court erred in admitting the other-acts evidence in this case. The state, as the proponent of the other-acts evidence, failed to present any evidence of a behavioral footprint and the trial court abused its discretion in admitting the other-acts evidence. We, therefore, need not address the relevancy or unfair prejudice factors. See *Williams*, 2011-Ohio-5650.

{¶ 23} This does not, however, end our inquiry. See *Knuckles*, 2011-Ohio-4242, ¶ 14. Yancy objected to the admission of the evidence at trial, and therefore harmless-error analysis is appropriate. *State v. Dixon*, Scioto App. No. 09CA3312, 2010-Ohio-5032, ¶ 42. Pursuant to Crim.R. 52(A) any error, defect, irregularity, or variance that does not affect a substantial right will be disregarded. "We apply non-constitutional harmless-error analysis to evidentiary errors such as this. A non-constitutional error is harmless when there is substantial other evidence to support the guilty verdict." (Internal quotations omitted.) *Dixon*, 2010-Ohio-5032, ¶ 42.

{¶ 24} In this case, there was substantial evidence to support the guilty verdict beyond the other-acts evidence. The most condemning evidence in this case was Yancy's DNA

found in the victims' home, coupled with the circumstantial evidence of Yancy being arrested in connection to the stolen vehicle adorned with his father's license plate. For this reason, Yancy's first assignment of error is overruled as the trial court's error in admitting the other-acts evidence was harmless.

{¶ 25} Yancy's second assignment of error provides: "The trial court erred in granting the state's motion for joinder because such joinder resulted in prejudice to the defendant, denying him a fair trial." His second assignment of error is without merit.

{¶ 26} Pursuant to Crim.R. 8(A) and 13, two or more offenses can be tried together if they are of similar character, based on connected transactions, or part of a course of conduct or common scheme. Ohio law favors joining multiple offenses in a single trial if the offenses charged are of the same or similar character. *State v. Lott* (1990), 51 Ohio St.3d 160, 163, 555 N.E.2d 293. In order to demonstrate a trial court erred in denying severance, a defendant must establish that (1) his rights were prejudiced, (2) he provided the trial court with sufficient information to demonstrate prejudice, and (3) the court abused its discretion in refusing to separate the charges for trial. *State v. Schaim* (1992), 65 Ohio St.3d 51, 59, 600 N.E.2d 661.

{¶ 27} In this case, the joined cases were based on connected transactions. Yancy was apprehended with the stolen Infiniti after allegedly leading the police on a high-speed chase through residential streets. This connected him to the burglary since the license plate on the vehicle was linked to Yancy's father, who was incarcerated during the entire time

period in question. The fact that Yancy was implicated with the stolen property is circumstantial evidence that he committed the burglary crime, and therefore the same evidence would be introduced in both trials. While we agree that stacking cases against a defendant is prejudicial in some respects, that observation alone is insufficient to establish that the defendant's rights were prejudiced. The trial court did not abuse its discretion in joining the two cases together for trial, and Yancy's second assignment of error is overruled.

{¶ 28} Yancy's third and final assignment of error provides: "The trial court erred when it denied the defendant's motion for an independent DNA test and expert witness which resulted in the denial of the defendant's due process rights as set forth under the Fifth and Fourteenth Amendments of the United States Constitution." His final assignment of error is overruled.

{¶ 29} The Ohio Supreme Court provided:

"Due process may require that a defendant be provided with expert assistance when necessary to present an adequate defense. However, to show entitlement to such assistance, the defense must make a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial. In making this determination, the court must consider (1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided."

(Internal citations and quotations omitted.) *State v. Campbell* (2000), 90 Ohio St.3d 320, 327-328, 738 N.E.2d 1178. Therefore, the defendant must present sufficient facts upon

which the court can make a decision. "'Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate.'" *State v. Taylor* (Dec. 7, 2000), Cuyahoga App. No. 76527, citing *State v. Weeks* (1989), 64 Ohio App.3d 595, 598, 582 N.E.2d 614.

{¶ 30} For example, in *State v. Mason* (1998), 82 Ohio St.3d 144, 694 N.E.2d 932, the Ohio Supreme Court affirmed the trial court's decision to deny the indigent defendant an independent DNA expert because the defendant did not challenge the underlying DNA identification. The court noted that any independent analysis would be superfluous. Id. at 152.

{¶ 31} Yancy submitted nothing to indicate that the results of an independent DNA testing would be likely to aid in his defense. Rather, Yancy argued that the state's sole link between Yancy and the burglary was the DNA profile found on the white baseball cap. Yancy contended that he required an independent DNA analysis to identify the unknown profiles found on the hat, the times at which each profile was placed on the hat, and the number of other contributors. Yancy, however, explored such issues on cross-examination of the state's DNA expert witness. The state's DNA expert admitted that it was not possible to determine when the DNA profiles were deposited on the hat, that the minor[3] profiles could

---

[3] Yancy's DNA profile was the major contribution found on the white baseball cap. The two unknown profiles were only minor contributions.

have been deposited after Yancy's DNA, and that there were at least two other unknown profiles found on the hat.

{¶ 32} More important, Yancy did not challenge the underlying DNA identification. The mere possibility that the independent DNA analysis could have had some value to the defense was not enough. *Mason*, 82 Ohio St.3d at 150. The defense presented the trial court with nothing more than speculation as to the likely value of an independent DNA analysis. This did not amount to the "particularized showing" required to entitle the defendant to an expert. We therefore overrule Yancy's third assignment of error.

The decision of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR