[Cite as *State v. Alexander*, 2019-Ohio-451.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106556**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**TONY E. ALEXANDER**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-17-613332-A

**BEFORE:** Jones, J., E.A. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 7, 2019

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Sean Kilbane
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113



LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Tony Alexander ("Alexander"), appeals his theft conviction that was rendered after a jury trial. For the reasons that follow, we reverse and remand.

**Procedural History and Facts**

{¶2} In 2017, Alexander was charged with one count of theft, a fifth-degree felony. Prior to trial, the state filed an Evid.R. 404(B) motion to introduce other acts testimony. Alexander objected, and the trial court granted the motion over Alexander's objection.

{¶3} The following pertinent evidence was presented at trial.

{¶4} Dustin Parsons ("Parsons"), an employee with Asplundh Tree Expert Co., was the general foreperson for a tree-trimming job in the Village of Walton Hills. His crew had a total of four work trucks that were parked on old Route 8. The trucks have built-in storage compartments on the sides where Asplundh employees would store equipment such as ropes and

chainsaws. These storage units would be locked and secured anytime the trucks were left unattended.

{¶5} On November 23, 2016, which was the Wednesday before Thanksgiving, the employees left the work site at 5:30 p.m. The employees secured the trucks at the site and parked them close — "an inch or two apart" — and facing opposite directions. This parking arrangement was meant to prevent any thefts from the storage units on the sides of the trucks. Before Parsons left the work site, he collected all the keys to the trucks, which included the keys to the storage units.

{¶6} When Parsons returned to the site on November 28, he discovered that locks of two of the side compartments had been cut and the doors forced open. Missing from the trucks were three chainsaws and a leaf blower, worth a total of $1,600.

{¶7} Parsons discovered a spot of blood on the door of a damaged storage unit and called police. Officer Thomas Creek from the Walton Hills police department responded to the scene and observed two spots of blood on one of the damaged side compartments. Sergeant David Kwiatkowski, also of the Walton Hills police department, observed blood on that same door, which he collected, and sent to the Ohio Bureau of Criminal Investigation ("BCI") for testing.

{¶8} Emily Feldenkris ("Feldenkris"), a forensic scientist in BCI's DNA section, performed the technical review for the case. Feldenkris explained the process of extracting a DNA profile from a piece of evidence and comparing it to a DNA standard, and that all conclusions and findings made by a DNA analyst are subject to a technical review by another qualified analyst. The technical review includes a second DNA analyst reviewing the original data and the controls to ensure that the tests were working properly, coming to his or her own independent conclusions, and verifying that the analyst who wrote the original report came to the

same conclusions.

{¶9} Feldenkris reviewed the data from the analyst who performed the DNA comparison. Feldenkris found that the swabs from the scene were consistent with Alexander, and the expected frequency of occurrence of that particular evidence profile was rarer than one in one trillion unrelated individuals.

{¶10} Alexander's DNA was in the computerized database from a previous case. Sergeant Dennis Papineau ("Sergeant Papineau") from the Erie County Sheriff's Office testified regarding that previous case, that involved two incidents. According to Sergeant Papineau, on November 23, 2015, he responded to a call for broken car windows in an outlet mall parking lot. He located blood inside one of the vehicles and was able to collect a blood sample for further analysis.

{¶11} On December 12, 2015, Sergeant Papineau responded to the same area after employees of Nelson Tree Service reported that one of their trucks had been broken into. Sergeant Papineau "knew that it could be most likely the same suspect that would be involved" in this incident and the November 23 incident. The police detained Alexander and located numerous chainsaws, a grinder, and an assortment of tools in the back seat of Alexander's car. Alexander initially told police he was an employee of the tree service company, but the police quickly learned this was not true.

{¶12} Based on this investigation, Sergeant Papineau secured a search warrant to obtain a buccal swab from Alexander to compare to the blood evidence that had been collected at the scene of the November 2015 vehicle break-ins. The sergeant did not testify regarding whether they made a DNA match or the outcome of Alexander's arrest in Erie County.

{¶13} The jury in the instant case convicted Alexander of the sole count in the

indictment.  The court sentenced him to two years of community control sanctions, ordered $1,266 in restitution, and waived all fines and costs.

## Assignments of Error

{¶14} Alexander now appeals, raising the following assignments of error for our review:

I.  The trial court erred by admitting other acts evidence over appellant's objection.

II.  The trial court erred and appellant was denied the effective assistance of counsel when Emily Feldenkris's testimony was admitted as expert testimony.

III.  Defendant's constitutional rights were violated when the state improperly commented on his decision to remain silent.

IV.  Appellant's convictions were not supported by sufficient evidence and the trial court erred by denying his motion for acquittal.

V.  The convictions were against the manifest weight of the evidence.

{¶15} The first assignment of error is dispositive of this appeal.

## Other-Acts Evidence was Inadmissible

{¶16} In the first assignment of error, Alexander contends that the trial court erred by admitting other-acts evidence.

{¶17} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.  *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.

{¶18} Under Evid.R. 403(A), exclusion of relevant evidence is mandatory "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."  Moreover, pursuant to Evid.R. 404(B), evidence that an accused committed a crime other than the one for which the accused is on trial is not admissible

when its sole purpose is to show the accused's propensity or inclination to commit crime, or that the accused acted in conformity with bad character. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15. There are exceptions, however, that allow other acts of wrongdoing to be admitted into evidence.

**{¶19}** R.C. 2945.59 provides:

[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his [or her] part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his [or her] motive or intent, the absence of mistake or accident on his [or her] part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶20}** Similarly, Evid.R. 404(B) provides that evidence of other crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show action in conformity therewith" but may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident." R.C. 2945.59 and Evid.R. 404(B) are "to be strictly construed against the state, and * * * conservatively applied by a trial court." *State v. DeMarco*, 31 Ohio St.3d 191, 194, 509 N.E.2d 1256 (1987).

**{¶21}** In *Williams*, the Ohio Supreme Court set forth the following three-step analysis for determining whether other-acts evidence is admissible:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401.

The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).

The third step is to consider whether the probative value of the other acts evidence

is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, at ¶ 20.

**{¶22}** According to the state, it sought to introduce evidence from the Erie County thefts to establish that BCI compared the collected evidence to the swab taken from Alexander in this case. The state also wanted to introduce evidence from the Erie County theft to establish Alexander's modus operandi ("M.O.") of breaking into tree service work trucks to steal equipment.

**{¶23}** Prior to trial, the parties discussed the state's Evid.R. 404(B) motion on the record. The court inquired whether the parties would stipulate to the DNA evidence in lieu of the Evid.R. 404(B) evidence being introduced. Alexander declined. The trial court ultimately allowed the Evid.R. 404(B) evidence to be introduced, but precluded the state from introducing Alexander's Erie County conviction.

**{¶24}** Pursuant to *Williams*, we first consider whether the other-acts evidence is relevant; that is, whether the Erie County thefts were relevant to this case. Alexander contends that the Erie County incidents are irrelevant because it happened at a different time in a different jurisdiction. The state argues that the fact at issue in this case was not whether there were items stolen, what the value was of the items stolen, or whether anyone had permission to take any of the items, but rather a question of *who* stole the items. Thus, the state contends, the issue in the case was whether Alexander was the individual who broke into the Asplundh work truck and stole the equipment, and the state sought to introduce the other-acts evidence to show the identity

of the perpetrator.

{¶25} The state introduced evidence that Alexander's DNA was on the Asplundh work truck. According to the state, it needed to explain to the jury why this fact was significant, and Evid.R. 404(B) "gave the state a vehicle to do so" because the December 2015 incident in Erie County dealt with a theft from another tree service work truck and the facts in the previous instance are almost identical to this case.

{¶26} In the instant case, there was testimony which allowed the jury to find that Alexander cut the lock off of the Asplundh work truck storage unit and took equipment. In the Erie County incident, Alexander was found with a grinder, and the Nelson trucks involved locks that had been cut from the storage units. Ultimately, the state contends, the other-acts evidence is relevant because it is evidence that the presence of Alexander's DNA on the Asplundh work truck was not coincidental.

{¶27} We agree with the state that the evidence was relevant. The facts and circumstances of the thefts are similar — both crimes involved breaking into the storage unit of tree trimming trucks with some kind of grinding tool and stealing equipment from the trucks.

{¶28} Our inquiry does not end here, however. Pursuant to *Williams*, we next consider whether the Erie County evidence was presented to prove Alexander's character to show that he acted in conformity therewith or whether the other-acts evidence was presented for a legitimate purpose under Evid.R. 404(B).

{¶29} Again, the state claims it sought to introduce evidence of the Erie County thefts to establish that the BCI compared the collected evidence to the swab taken from Alexander in this case to establish Alexander's identity and also to show his M.O.

{¶30} We find no merit to the state's contention that the other-acts evidence was

admissible to show identity. The state had a DNA match to identify Alexander as the perpetrator in this case; if identity was at issue, the best evidence was the objective DNA evidence from this case, not the evidence from Erie County.

{¶31} Extrinsic evidence of prior bad acts may also be used to identify the defendant as the perpetrator of the offense by showing that the defendant committed similar crimes using a distinct M.O. But a prior act involving the defendant committing the same or similar offense does not automatically constitute a M.O. Evidence of a certain M.O. is admissible under Evid.R. 404(B) when it "provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994).

{¶32} To qualify as a M.O., there must be some unique pattern tending to show that the crimes were committed by the same person. For example, in *State v. Bey*, 85 Ohio St.3d 487, 709 N.E.2d 484 (1999), the Ohio Supreme Court held that the other-acts evidence was admissible in a homicide case because both victims were businessmen who were killed at their place of business, both were stabbed in the chest with a knife, both men had their trousers removed and their shoes were placed next to their bodies, and although both businesses were robbed, jewelry was left on each man.

{¶33} Conversely, in *State v. Yancy*, 8th Dist. Cuyahoga Nos. 96527 and 96528, 2011-Ohio-6274, this court found that the trial court erred in admitting evidence of a prior burglary conviction because the facts did not provide a behavioral footprint with which to identify the defendant as the perpetrator of the crime. The similar facts included that a perpetrator gained access to an older home in Shaker Heights, Ohio, at night, by slicing the window screen to unlatch the window and steal easily accessible items commonly found on a

kitchen counter, such as wallets, purses, and keys. *Id.* at ¶ 20, 22.

{¶34} The similarities between the December 2015 theft from Nelson in Erie County and November 2016 theft from Asplundh in Cuyahoga County are striking only because the two thefts involved similar victims — tree service companies. There is nothing unique about the manner in which Alexander committed the thefts that provide "a distinctive behavioral fingerprint." Moreover, the extraneous details of the December 2015 Erie County theft were less probative than the DNA evidence from this case. Therefore, we find that the facts surrounding the December Erie County theft, including the fact that the victim was another tree trimming company, were not admissible to show M.O.

{¶35} Third, under *Williams*, we consider whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice. We find that even if the facts of the December 2015 Erie County incident were admissible to show M.O., the admission of that evidence is substantially outweighed by the danger of unfair prejudice.

{¶36} In balancing the probative value of certain evidence against its possible prejudicial tendency, it is appropriate to assess evidentiary alternatives the same way. *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, 84 N.E.3d 981, ¶ 22. Probative value is measured partially by the relative scarcity of evidence on the same issue; that is, if the state offers evidence for which there is an evidentiary alternative that has substantially similar or greater probative value but is less prejudicial, the probative value of the state's evidence must be discounted. *Id.*, citing *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). "The danger of unfair prejudice is then weighed against this reduced probative value." *Creech* at *id.* In other words, the probative value of the state's evidence is affected by the presence of an evidentiary alternative. *Id.* at ¶ 24.

{¶37} In this case, there was an evidentiary alternative to the other-acts evidence the state wished to introduce. Although the state first collected Alexander's DNA in Erie County, there was no reason why the state needed to introduce evidence of two Erie County incidents to show a DNA match in this case. The state could have easily introduced the DNA evidence from this case without discussing any specifics of Alexander's alleged prior acts.

{¶38} In addition, as discussed, the state introduced other-acts evidence of two incidents, only one of which involved a theft from a tree service truck. The November 2015 Erie County incident involved car break-ins. It was during that incident that Alexander's DNA was first collected, but the circumstances of those break-ins were dissimilar from facts of this case. The November 2015 incident involved a perpetrator breaking car windows while the cars were parked in an outlet mall parking lot. The facts of that incident differ from the instant case, where it was alleged that Alexander broke into an unattended tree-trimming vehicle, parked on the side of the road, to steal equipment.

{¶39} We are further troubled by the fact that the trial court did not give the jury a limiting instruction with regard to Alexander's prior acts. A trial court can minimalize potential prejudice by providing limiting instructions before testimony and again before submitting the case to the jury. *See State v. Mills*, 2016-Ohio-6985, 72 N.E.3d 76, ¶ 18 (12th Dist.). No limiting instruction was given in this case.

{¶40} If there was any doubt about the state's motive to introduce the other-acts evidence in this case, one need only consider the state's closing argument. During closing arguments, the state told the jury that even if the jury did not believe the DNA or other evidence that showed that Alexander committed a theft, the jury should still convict Alexander based on his prior act:

> If any of that evidence is not enough for you, if you are still thinking, okay, I don't know, maybe, maybe there is a chance, maybe there is some doubt there, okay, go

back to almost a year prior in Erie County where the defendant is seen with three chainsaws in the back of his truck after he stole from yet another tree service company. This is what he does. This is his M.O. He takes items from tree service companies. The same amount that was taken in this case, he had a handheld saw in that case that was presumably used and what the evidence shows was used in this case.

**{¶41}** Here, the state is admitting that it used the evidence of a prior bad act to show that Alexander acted in conformity therein in the current crime.

**{¶42}** The error was not harmless. "Pursuant to Crim.R. 52(A), 'any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.' In order to find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt." *State v. Stephens*, 2016-Ohio-384, 59 N.E.3d 612, ¶ 34 (8th Dist.), quoting *State v. Lytle*, 48 Ohio St.2d 391, 403, 358 N.E.2d 623 (1976). A reviewing court may overlook an error where the remaining admissible evidence, standing alone, constitutes "overwhelming" proof of a defendant's guilt. *Stephens* at *id*., citing *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983). If there is "'no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal.'" *Stephens* at *id.*, quoting *State v. Brown*, 65 Ohio St.3d 483, 605 N.E.2d 46 (1992).

**{¶43}** In this case, a reasonable possibility exists that the testimony regarding the Erie County incidents contributed to Alexander's conviction. Moreover, although the state presented evidence that Alexander's DNA was found on one of Asplundh's trucks, that evidence alone is not overwhelming proof of his guilt. *Compare Yancy*, 8th Dist. Cuyahoga Nos. 96527 and 96528, 2011-Ohio-6274 (substantial evidence to support guilty verdict beyond other-acts evidence included defendant's DNA found in an unknown hat in the victims' home and defendant being arrested in the victims' stolen car, which had on it license plates registered to defendant's father).

**{¶44}** Simply put, there was no legitimate reason to allow facts about the prior theft, which do not establish identity or M.O., and that do not fall into any other Evid.R. 404(B) exception, especially when objective DNA evidence could have been admitted without detailing Alexander's prior acts. That is *unless* the state's objective was to show "this is what he does." In light of the above, the admission of the evidence unfairly prejudiced Alexander.

**{¶45}** The first assignment of error is sustained. Alexander's conviction is reversed, and the case is remanded for further proceedings consistent with this opinion.

**{¶46}** The remaining assignments of error are moot given our disposition of the first assignment of error. *See* App.R. 12(A)(1)(c).

**{¶47}** Judgment reversed; case remanded.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

LARRY A. JONES, SR., JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS
WITH SEPARATE OPINION

EILEEN T. GALLAGHER, J., DISSENTING:

**{¶48}** I respectfully dissent because while I agree the trial court erred in admitting detailed evidence of Alexander's prior criminal activities, I find the error harmless given the fact that Alexander's DNA was found on the Asplundh trucks. Some evidence of Alexander's prior criminal activities was necessary to explain how the police obtained his DNA since Alexander refused to stipulate to the DNA evidence, but the details of those activities did not qualify as a modus operandi and were not necessary to prove identity. I nevertheless believe the error in allowing these details to come into evidence was harmless because the DNA evidence linking Alexander to the thefts was enough to convict him even if the extraneous details of his other crimes had been excluded.